UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PATRICK R. DE BORJA, individually and
MAKILING FARMS, INC., a Philippine
corporation,

                Plaintiffs,

    v.

ENRIQUE K. RAZON, JR., individually;
INTERNATIONAL CONTAINER
TERMINAL SERVICES, INC., a Philippine
corporation; ICTSI OREGON INC., an Oregon
corporation; and JOHN AND/OR JANE DOES
1-20,

                Defendants.

Case No. 3:18-cv-01131-YY

OPINION AND ORDER

YOU, Magistrate Judge:

      Plaintiffs Patrick R. de Borja ("de Borja") and Makiling Farms, Inc. ("MFI") filed suit

against defendants Enrique K. Razon, Jr., International Container Terminal Services, Inc.

("ICTSI") (collectively "foreign defendants"), and ICTSI Oregon, Inc. in 2018 over four

fraudulent stock transfers made in 1989 and 1991. By prior order, this court dismissed the action

without prejudice under the doctrine of *forum non conveniens* because the Philippines constitutes

1 – OPINION AND ORDER

an adequate alternative form, and the private and public interest factors weighed heavily toward

dismissal.  Findings and Recommendations, ECF# 83, *adopted by* Order, ECF #90.

The court deferred ruling on defendants' motion for sanctions (ECF #73), which must

now be resolved.  *Id.* at 3 n.2.  Defendants move for sanctions against plaintiffs pursuant to

Federal Rule of Civil Procedure 11 and the court's inherent power, claiming that the complaint

was frivolous because it was barred by the statute of limitations and failed to establish personal

and subject matter jurisdiction.  Defs.' Mot. Sanctions 7, 14, 18, ECF #73.  Defendants also

contend that sanctions are warranted against both plaintiffs and their attorneys under Rule 11, the

court's inherent authority, and § 1927 because they engaged in harassing motions practice with

the intent to "overwhelm" defendants and this court.  *Id.* at 21.  In their response to defendants'

motion, plaintiffs move for countersanctions under Rule 11 and § 1927.  Pls.' Resp. Opp. Mot.

Sanctions 28, ECF #75.

As the court dismissed the underlying action without addressing statute of limitations,

personal jurisdiction, or subject matter jurisdiction, the court asked the parties whether it would

be an abuse of discretion to decline to reach those issues when ruling on defendants' motion for

sanctions, which included additional bases for sanctions.  Order, ECF #92.  Defendants

responded that the court could and should address these issues.  *See* Defs.' Suppl. Brief, ECF

#95.  Plaintiffs responded "no," but then concluded that the court "presumably must at least

consider the issues to determine whether they are non-frivolous," without citing to authority

reconciling their answer with this presumption.  Pls.' Suppl. Brief 2-3, ECF #93.

Even where the underlying action has been dismissed, the court retains authority to

decide a motion for sanctions.  *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992); *Cooter & Gell

v. Hartmarx Corp.*, 496 U.S. 384, 395-98 (1990).  The imposition of sanctions is "not a judgment

on the merits of an action.  Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell*, 496 U.S. at 396.

Some authority supports the notion that a complaint may be deemed nonfrivolous for purposes of Rule 11(b) when it is dismissed without prejudice on procedural grounds.  In *Sussman v. Bank of Israel*, 56 F.3d 450 (1995), the Second Circuit affirmed a district court's refusal to consider whether a complaint was frivolous on a Rule 11 sanctions motion after dismissing the action under *forum non conveniens*.  The district court "declined to rule on [the defendant's] contention that the allegations of the complaint were unsubstantiated, noting that it did not reach the merits in dismissing the complaint on forum non conveniens grounds, and declining to expend more judicial resources in exploring them now."  *Id.* at 454 (internal citation, quotation marks, and original alterations omitted).  On appeal, the defendant argued that the district court abused its discretion by refusing to consider whether the complaint was frivolous for the purpose of imposing sanctions.  *Id.* at 455-56.  The Second Circuit disagreed, finding that because the dismissal was without prejudice to the merits of the claims and the plaintiff could pursue them in a different jurisdiction, the claims "must be deemed nonfrivolous" for the Rule 11 analysis.  *Id.* at 457.  Likewise, in *SD Holdings, LLC v. Aircraft Owners & Pilots Ass'n, Inc.*, the defendant moved for Rule 11 sanctions on grounds the complaint was factually baseless.  No. 3:13-CV-01296-AC, 2014 WL 3667881, at *8 (D. Or. July 22, 2014).  The court dismissed the action for lack of personal jurisdiction and denied the motion for sanctions reasoning the motion should "be determined by the court ultimately deciding the merits of the action."  *Id.* at *10. However, the court also retained jurisdiction to allow the defendants to renew their motion for sanctions if the plaintiff failed to pursue its claims in the proper jurisdiction.  *Id.* at *11.

Here, the court also dismissed the action without prejudice under *forum non conveniens*. The court did not impose conditions on the dismissal, but plaintiffs were already pursuing parallel litigation in the Philippines. Unlike *Sussman* and *SD Holdings*, however, defendants' motion for sanctions does not turn solely on the merits of the claims, but instead on matters particular to suing here, i.e., subject matter and personal jurisdiction. The allegedly sanctionable conduct is independent of the merits and cannot be sanctioned by a Philippine court.

Thus, because no other court will have the opportunity to determine the propriety of plaintiffs' actions in bringing suit here, the court reaches the issues necessary to determine whether sanctionable conduct has occurred. Otherwise, potential abuses of our judicial system would go unchecked.

After reviewing hundreds of pages of briefing and examining voluminous case law, including Philippine law, the court finds that, with respect to defendants' motion for sanctions (ECF #73), the complaint is legally and factually baseless from an objective perspective for lack of subject matter jurisdiction and no reasonable and competent inquiry was made into subject matter jurisdiction. Because a hearing will assist the court in exercising its discretion whether to award sanctions, the court orders a hearing on that issue. Plaintiffs' motion for countersanctions (ECF #75) is denied, for the reasons discussed below.[1]

---

[1] The law in the Ninth Circuit is clear that magistrate judges may impose Rule 11 sanctions when they are nondispositive of a claim or defense of a party. *U.S. v. Rivera-Guerrero*, 377 F.3d 1064, 1067 (9th Cir. 2004) (quoting *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 747 (9th Cir. 1990); *see also* FED. R. CIV. P. 72(a), (b) (distinguishing nondispositive from dispositive matters); 28 U.S.C. § 636(b)(1)(A), (B) (setting out magistrate judge's jurisdiction over eight categories of dispositive pretrial motions); *Gomez v. U.S.*, 490 U.S. 858, 873-74 (1989) (indicating the list of eight categories of dispositive pretrial motions in § 636(b)(1)(A) is not exhaustive). Here, as in *Maisonville*, the imposition of sanctions is not dispositive of a claim or defense of a party because the action has already been dismissed, and the motion for sanctions is all that remains for the court to decide. 902 F.2d at 747 ("[T]he Rule 11 sanctions imposed here

## I.      Standards

The court has authority to sanction both litigants and attorneys under Rule 11 and its

inherent power.  Additionally, 28 U.S.C. § 1927 provides the court with authority to sanction

attorneys.  An "entry of sanctions is reviewed for an abuse of discretion."  *Primus Automotive*

*Fin. Services, Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).

### A.      Rule 11

Rule 11 governs papers filed with the court.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41

(1991).

> By presenting to the court a pleading, written motion, or other paper[,] . . . an
> attorney . . . certifies that to the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass,
>> cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by
>> existing law or by a nonfrivolous argument for extending, modifying, or
>> reversing existing law or for establishing new law;
>> (3) the factual contentions have evidentiary support or, if specifically so
>> identified, will likely have evidentiary support after a reasonable
>> opportunity for further investigation or discovery;
>> (4) the denials of factual contentions are warranted on the evidence or, if
>> specifically so identified, are reasonably based on belief or a lack of
>> information.

FED. R. CIV. P. 11(b).

---

were not dispositive of a claim or defense of a party.  In fact, the parties had already settled the
case prior to Dombroski's filing his motion for reconsideration.  Thus, under Rule 72(a), the
Rule 11 sanctions imposed in this case are properly characterized as non-dispositive.").

   Sanctions imposed under § 1927 and the court's inherent power may similarly be non-
dispositive, as they are here.  The Ninth Circuit has analogized sanctions under § 1927 and its
inherent power to sanctions under Rule 11 and Rule 37.  *See Stanley v. Woodford*, 449 F.3d
1060, 1064 (9th Cir. 2006) ("the policies undergirding Rule 37(a) sanctions are not relevantly
different from those justifying sanctions under § 1927 or a court's inherent powers"); *Grimes v.*
*City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991) ("we see no material
distinctions between Rule 11 sanctions and Rule 37 [discovery] sanctions") (quoting
*Maisonville*, 902 F.2d at 748) (alteration in *Grimes*).

Rule 11 sanctions are governed by "an objective standard of reasonable inquiry." *Chambers*, 501 U.S. at 47. The court considers whether the complaint is legally or factually baseless from an "objective perspective." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002).

Under Rule 11, motions for sanctions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11(c)(2). The rule also contains a safe harbor: the party served with the motion must be given 21 days after service to withdraw or correct the challenged conduct. *Id.*

**B.    28 U.S.C. § 1927**

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. This statute only applies to attorneys. *Chambers*, 501 U.S. at 41.

"To impose sanctions under section 1927, the court must make a finding of bad faith." *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1080 (D. Or. 2010), *as amended* (May 13, 2010) (citing *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990)). Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim to harass an opponent. *Id.* (citing *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1185-86 (9th Cir. 1988)).

### C.   Inherent Power

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).  "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers*, 501 U.S. at 44-45).

To impose sanctions pursuant to its inherent power, the court must make a finding of bad faith.  *Chambers*, 501 U.S. at 47.  Because the court's inherent authority to sanction is an "undelegated power[, it] should be exercised with especial restraint and discretion."  *Goodyear Tire & Rubber*, 137 S. Ct. at 1186 n.5 (internal citation and quotation marks omitted).  "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."  *Chambers*, 501 U.S. at 50.  As discussed below, the court need not invoke its inherent power here because Rule 11 and § 1927 provide authority to impose sanctions.

### D.   Nature of Sanctions

Sanctions imposed under Rule 11 and § 1927 "must be compensatory rather than punitive in nature."[2] *Goodyear Tire & Rubber*, 137 S. Ct. at 1186.  As such, courts "can shift only those attorney's fees incurred because of the misconduct at issue."  *Id.*  Nonetheless, "[i]f a plaintiff

---

[2] The court has authority to award punitive sanctions, meaning that the award may exceed the loss resulting from the misconduct.  However, the imposition of punitive sanctions requires additional procedural safeguards "applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof."  *Goodyear Tire & Rubber*, 137 S. Ct. at 1186.  Defendants do not seek punitive sanctions here.

initiates a case in complete bad faith, so that every cost of defense is attributable only to

sanctioned behavior, the court may . . . make a blanket award." *Id.* at 1188.

## II.      The Complaint

"Filing a complaint in federal court is no trifling undertaking.  An attorney's signature on

a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing

law' (or proposes a good faith extension of the existing law) and that it is not filed for an

improper purpose." *Christian*, 286 F.3d at 1127.  "Where . . . the complaint is the primary focus

of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1)

whether the complaint is legally or factually baseless from an objective perspective, and (2) if the

attorney has conducted a reasonable and competent inquiry before signing and filing it." *Id.*

(internal citation and quotation marks omitted).

### A.      Choice of Law

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law

and federal procedural law."  *In re Cty. of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015)

(quoting *Gasperini v. Ctr. for Humyoanities, Inc.*, 518 U.S. 415, 427 (1996)).  The forum state's

choice-of-law rules control which state's substantive law applies.  *CRS Recovery, Inc. v. Laxton*,

600 F.3d 1138, 1141 (9th Cir. 2010).

The parties agree Philippine substantive law applies here, but for different reasons.

Comp. ¶ 163, ECF #1; ICTSI Oregon's Mot. Dismiss 9, ECF #31; Pls.' Resp. Opp. Defs.' Mot.

Dismiss 7-8, ECF #42.  Plaintiffs and foreign defendants incorrectly argue that Oregon follows

the common-law "most significant relationship" test set forth in the Restatement (Second) of

Conflicts of Laws and application of that test mandates that plaintiffs' claims are governed by

Philippine substantive law.  Pls.' Resp. Opp. Defs.' Mot. Dismiss 8, ECF #42; Foreign Defs.'

Mot. Dismiss 27, ECF #27. ICTSI Oregon, represented by the same counsel as foreign

defendants, correctly rely on Oregon's statutory scheme to arrive at the same result. ICTSI

Oregon's Mot. Dismiss 8-9, ECF #31. *See* O.R.S. 15.300–.380 (governing choice of law for

contracts); O.R.S. 15.400–.460 (governing choice of law for torts and other noncontractual

claims).[3]

Plaintiffs asserted twenty-two claims, including for fraud, breach of fiduciary duty, civil

conspiracy, misappropriation, and conversion. These claims sound in tort. Thus, the court

applies the statutory scheme set forth in O.R.S. 15.400–.460.

Two pertinent provisions appear to apply here: O.R.S. 15.440(2)(a) and (3)(a). O.R.S.

15.440(2)(a) provides:

> (2)(a) If the injured person and the person whose conduct caused the injury were
> domiciled in the same state, the law of that state governs. However, the law of the
> state in which the injurious conduct occurred determines the standard of care by
> which the conduct is judged. If the injury occurred in a state other than the one in
> which the conduct occurred, the provisions of subsection (3)(c) of this section
> apply.

O.R.S. 15.440(3)(a) provides:

> (3) If the injured person and the person whose conduct caused the injury were
> domiciled in different states and the laws of those states on the disputed issues
> would produce a different outcome, the law of the state designated in this
> subsection governs.
> > (a) If both the injurious conduct and the resulting injury occurred in the
> > same state, the law of that state governs if either the injured person or the
> > person whose conduct caused the injury was domiciled in that state.

---

[3] Oregon adopted new choice-of-law rules governing contracts in 2001 and new choice-of-law
rules governing torts and other noncontractual claims in 2009. *See* 2009 Or. Laws ch. 451 (S.B.
561); 2001 Or. Laws ch. 164, *see also Portfolio Recovery Assocs., LLC v. Sanders*, 366 Or. 355,
365-66, 366 n.7 (2020) (explaining the evolution of Oregon's choice-of-law rules); *R.M. v. Am.
Airlines, Inc.*, 338 F. Supp. 3d 1203, 1210 (D. Or. 2018) ("As of January 1, 2010, Oregon courts
follow a statutory choice of law methodology."); *Lewis v. Fedex Ground Package System, Inc.*,
No. 0702-01363, 2008 WL 4144389 (Or. Cir. Aug. 15, 2008) ("In 2001, Oregon became the first
state with a common law tradition to codify choice-of-law for contracts.").

All of the alleged misconduct occurred in the Philippines. *See* Compl. ¶¶ 83-107. MFI, Razon, Jr., and ICTSI are domiciled in the Philippines. *Id.* ¶¶ 6-7, 23. ICTSI Oregon is domiciled in Oregon. *See id.* ¶¶ 31-32. As discussed below, de Borja appears to be stateless, and whether de Borja and ICTSI Oregon are real parties in interest is at issue. Regardless, under O.R.S. 15.440(2)(a), which applies when "the injured person and the person whose conduct caused the injury were domiciled in the same state," Philippine substantive law applies. Alternatively, under O.R.S. 15.440(3)(a), which applies when "the injured person and the person whose conduct caused the injury were domiciled in different states," but "both the injurious conduct and the resulting injury occurred in the same state," Philippine substantive law applies. Thus, regardless of how the contested matters are resolved, Philippine substantive law applies here.

### B.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal quotation marks omitted)). "It is to be presumed that a cause lies outside of federal courts' limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1091 (9th Cir. 2014) (citing *Kokkonen*, 511 U.S. at 377). "Subject matter jurisdiction "can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Objections to the court's jurisdiction "may be resurrected at any point in the litigation," and courts are obligated to consider *sua sponte* the requirements that go to subject matter jurisdiction. *Id.*; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (holding all courts have "an independent obligation to determine whether subject-matter jurisdiction

exists, even in the absence of a challenge from any party"); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"The existence of federal subject matter jurisdiction must be apparent on the face of the complaint." *Huot v. Montana State Dep't of Child & Family Servs.*, No. 3:16-CV-01767-KI, 2016 WL 4770040, at *2 (D. Or. Sept. 13, 2016) (citing *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998)) (holding "the presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule"). And it is well established that "[i]n assessing diversity jurisdiction, courts look to the real parties to the controversy." *Lewis v. Clarke*, 137 S. Ct. 1285, 1294 (2017) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)). "[T]he citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Savings*, 446 U.S. at 460. "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* at 461.

In determining subject matter jurisdiction, "the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need *not* assume the truthfulness of the complaint." *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006) (emphasis in original). When a defendant challenges the plaintiff's factual allegations with proof outside the pleadings, "the plaintiff must support her jurisdictional allegations with 'competent proof' under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has

been met." *Id*. The district court may resolve disputed factual issues unless "the issue of subject matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id*. at 1122 n.3.

Generally, the jurisdiction of federal courts is limited to cases governed by federal law (federal-question jurisdiction under 28 U.S.C. § 1331), cases where the parties are completely diverse and the amount in controversy is greater than $75,000 (diversity jurisdiction under 28 U.S.C. § 1332), or cases in which the United States is a party (28 U.S.C. §§ 1345 & 1346).[4] Diversity jurisdiction requires complete diversity among plaintiffs and defendants. *Jungil Lee v. ANC Car Rental Corp.*, 220 F. App'x 493 (9th Cir. 2007) (cited pursuant to Ninth Cir. Rule App. Procedure 36-3); *Faysound Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290, 295 (9th Cir. 1989) ("diversity must be complete").

Here, as discussed in further detail below, diversity jurisdiction is lacking under § 1332(a)(2) because the parties are not completely diverse. De Borja's statelessness destroys complete diversity under § 1332(a)(3). But even if de Borja was not stateless, his direct claims are premised on a collusive assignment of one share of E. Razon, Inc. ("ERI") stock, which improperly manufactures subject matter jurisdiction. De Borja also does not have prudential standing to bring derivative claims because he did not own shares of ERI stock when Razon, Jr. and his late father allegedly defrauded ERI. De Borja may not sustain a derivative action on behalf of MFI in his own name because MFI is a distinct corporate entity. And plaintiffs' double derivative standing argument is wholly without merit. Without a plaintiff who is a United States citizen, the court lacks subject matter jurisdiction under § 1332(a)(3). Thus, the complaint is

---

[4] There are of course additional bases for federal subject matter jurisdiction. *See generally* 14A FED. PRAC. & PROC. JURIS. §§ 3661–3691 (4th ed.).

legally and factually baseless from an objective perspective for lack of subject matter jurisdiction.

### 1.    Summary of Arguments

In their complaint, plaintiffs invoked diversity jurisdiction under 28 U.S.C. § 1332(a)(2). Compl. ¶ 4, ECF #1.  In its motion to dismiss, ICTSI Oregon cogently set forth why § 1332(a)(2) is clearly inapplicable.  ICTSI Oregon's Mot. Dismiss 13, ECF #31.  ICTSI Oregon then pointed out that while § 1332(a)(3) is more applicable, subject matter jurisdiction is also lacking under that statute because (1) de Borja and ICTSI Oregon are not real parties in interest, (2) plaintiffs do not have standing to bring individual claims, (3) plaintiffs' derivative claims fail, (4) de Borja cannot bring derivative claims, (5) ICTSI Oregon did not exist when the fraud occurred, (6) ICTSI Oregon did not act affirmatively in furtherance of the fraud, (7) ICTSI Oregon cannot be liable under successor-in-interest or agency theories of liability, and (8) plaintiffs cannot pierce the corporate veil of ICTSI Oregon, and (9) plaintiffs collusively manufactured diversity jurisdiction by naming de Borja as a plaintiff and ICTSI Oregon as a defendant.  *Id.* at 14-26.[5]

Instead of addressing these deficiencies, plaintiffs filed a motion for jurisdictional discovery regarding matters of personal jurisdiction and *forum non conveniens*, and asked for more time to respond to defendants' motion to dismiss, arguing they could not do so adequately without the requested discovery.  Pls.' Mot. Jurisdiction-Related Discovery, ECF #35.  In response, defendants argued *inter alia* that ICTSI Oregon's motion to dismiss for lack of subject

---

[5] Although the court previously held ICTSI Oregon was a nominal party (which would also destroy diversity jurisdiction under § 1332(a)(3)), Findings and Recommendations 10, ECF#83, *adopted by* Order, ECF #90, the court focuses the below inquiry on plaintiff de Borja because no amount of plaintiffs' requested jurisdictional discovery could reveal whether de Borja is a real party in interest.  Defendants' arguments regarding ICTSI Oregon are well taken.

matter jurisdiction would not be affected by any discovery related to personal jurisdiction or *forum non conveniens*.  Defs.' Response Opp. Mot. Jurisdiction-Related Discovery 8-9, ECF #36.  Without leave of the court, in violation of LR 26-3(c),[6] plaintiffs filed a reply in support of their motion for jurisdictional discovery but *did not address* the arguments related to subject matter jurisdiction.  *See* Pls.' Reply Support Mot. Jurisdiction-Related Discovery, ECF #38.[7]

Then, plaintiffs filed their joint response to defendants' motions to dismiss but inexplicably fail to address nearly any of defendants' subject-matter-jurisdiction arguments other than generically stating, in a footnote, that "federal jurisdictional statues expressly anticipate foreign parties will sue and be sued in federal courts, and suits in federal courts by foreign parties are commonplace in a globalizing world," and blindly citing to various subject-matter-jurisdiction statutes, including those that provide jurisdiction over maritime disputes and disputes involving foreign states and diplomats.  Pls.' Resp. Opp. Defs.' Mot. Dismiss 82 n.220, ECF #42.  Plaintiffs addressed defendants' arguments regarding plaintiffs' standing to bring individual claims, i.e., a direct action, and asserted a new theory of double derivative standing. *Id.* at 85-87.  They also incorporate by reference, in a footnote, 11 paragraphs from their Philippine legal expert's declaration without any additional analysis.  *Id.* at 85 n.297.  Their legal

---

[6] Local Rule 26-3(c) provides that, "[u]nless otherwise directed by the Court, a movant may not file a reply supporting a discovery motion."

[7] It makes no sense to allow discovery into matters of personal jurisdiction when subject matter jurisdiction is clearly in question.  Subject matter jurisdiction is equally a threshold issue.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  Had this court not dismissed the action under *forum non conveniens*, the next logical step would have been to establish the court's subject matter jurisdiction over the case, not put that inquiry on hold to allow discovery into plaintiffs' admittedly tenuous theories of personal jurisdiction—discovery plaintiffs do not appear to have been getting in parallel litigation in the Philippines but which might have improved their position in that forum.  *See* Pls.' Mot. Jurisdiction-Related Discovery 5, ECF #35 (arguing jurisdictional and merits issues overlap).

expert addresses issues of standing and derivative claims but does not address the issue of subject matter jurisdiction. *See* Decl. Jose Melo ¶¶ 55-66 ("Melo Decl."), ECF #43.

Defendants next moved for sanctions, arguing lack of subject matter jurisdiction. Defs.' Mot. Sanctions 14-18, ECF #73. In plaintiffs' response, they again inexplicably fail to address nearly all defendants' arguments regarding subject matter jurisdiction, instead incorporating by reference (in a footnote) the standing argument they had made in their prior response brief (ECF #42) and the same 11 paragraphs from their Philippine legal expert's declaration. Pls.' Resp. Opp. Defs.' Mot. Sanctions 22 n.78, ECF #75. Plaintiffs also stated, "While Defendants go about it in a convoluted manner and never say as much straight out, they basically want to eliminate the domestic parties on both sides to defeat subject matter jurisdiction (*i.e.,* diversity)."[8] Pls.' Resp. Defs.' Mot. Sanctions, 22 n.77, ECF #75. Again conflating personal jurisdiction with subject matter jurisdiction, plaintiffs argued "the need for jurisdiction-related discovery is greater now more than ever provided the evolving uncertainties involved in determining jurisdiction under recent Supreme Court decisions." *Id.* at 25.

Finally, ICTSI Oregon contends the court should treat plaintiffs' silence as a concession, as they fail to respond to many of the dispositive arguments regarding subject matter jurisdiction. ICTSI Oregon's Reply Supp. Mot. Dismiss 3-5, ECF #78.

### 2.    28 U.S.C. § 1332(a)(2)

The complaint alleges:

Diversity jurisdiction inescapably applies and attaches to this cross-border dispute. This Court accordingly has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of the United States and foreign subjects.

---

[8] To the contrary, the briefing is not convoluted and this has been ICTSI Oregon's explicit argument from the outset. *See* ICTSI Oregon's Mot. Dismiss 26, ECF #31.

Compl. ¶ 4, ECF #1.

28 U.S.C. § 1332(a)(2) covers disputes "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state." Section 1332(a)(2) requires complete diversity, not minimal diversity. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1056 (9th Cir. 2016) ("Because there are American citizens on both sides of the case, jurisdiction cannot be grounded in § 1332(a)(2)."); *Jungil Lee*, 220 F. App'x at 495 ("We have interpreted § 1332(a)(2) to require complete diversity of parties. That is, aliens may not be on both sides of the litigation."); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) ("the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal.") (citing *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L. Ed. 435 (1806)).

Here, the parties are not completely diverse because plaintiff MFI and foreign defendants ICTSI and Razon, Jr. are all Philippine citizens. A corporation is deemed "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 559 U.S. at 92-93. In practice "it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'" *Id.* at 93. The corporation's "citizenship alone matters and the status of whose individual shareholders can therefore be ignored." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998).

MFI is incorporated under Philippine law and has its principal place of business in Manila, Philippines. Compl. ¶ 6. Foreign defendants are likewise domiciled in the Philippines. Compl. ¶ 7 (Razon, Jr.), ¶ 23 (ICTSI). As such, this court clearly lacks subject matter jurisdiction under § 1332(a)(2) because the parties are not completely diverse. Plaintiffs do not refute this argument or allege diversity jurisdiction under any other statute.

### 3. 28 U.S.C. § 1332(a)(3)

Diversity jurisdiction under 28 U.S.C. § 1332(a)(3) covers disputes between "citizens of different states and in which citizens or subjects of a foreign state are additional parties." "Under the plain language of § 1332(a)(3), for jurisdiction to exist there must be both United States citizen plaintiffs and United States citizen defendants." *Jungil Lee*, 220 F. App'x at 495; *accord Faysound*, 878 F.2d at 294 ("Diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants").

Defendants point out that, based on the alignment of the parties in the complaint, plaintiffs may have intended to assert diversity jurisdiction under this statute. ICTSI Oregon's Mot. Dismiss 14, ECF #31. Again, plaintiffs do not even acknowledge this assertion. Nevertheless, § 1332(a)(3) appears to be the only plausible basis under which plaintiffs could assert subject matter jurisdiction here: The only purported United States citizens are plaintiff de Borja and defendant ICTSI Oregon, and there are alien plaintiffs and defendants. Thus, whether de Borja is a citizen of a state, whether he has standing to bring claims, and whether he is a real party in interest to the controversy are dispositive of subject matter jurisdiction under § 1332(a)(3). Because defendants' argument regarding de Borja is dispositive, the court does not reach defendants' argument regarding ICTSI Oregon.

i.    De Borja—Stateless

"[T]o be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green*, 490 U.S. at 828 (emphasis in original) (citations omitted).  Defendants argue de Borja is "stateless" because he is not domiciled in any State.  Plaintiffs do not acknowledge or refute this argument.

"For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning *one's intent to remain there*." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (emphasis added) (citing *Texas v. Florida*, 306 U.S. 398, 424 (1939)).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.  A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A person may have multiple residences, but "can only have one domicile." *Aponte–Dávila v. Municipality of Caguas*, 828 F.3d 40, 49 (1st Cir. 2016) (citation and quotation marks omitted).

Here, the complaint alleges that de Borja is a citizen of the United States, but does not allege which state is his domicile.  The complaint alleges that de Borja moved to the United States after graduating from college in the Philippines.  Compl. ¶ 5, ECF #1.  It further states that de Borja lived and worked in San Francisco, California, then Dallas, Texas, and then Houston, Texas.  *Id.*  It states that de Borja is now retired, and "currently is and continues to regularly reside (when State-side) and receive mail at an address in San Bruno, California." *Id.*  The complaint also alleges de Borja is the president and principal of MFI, a Philippine company with

its principal place of business in Manila.  Compl. ¶ 6, ECF #1; Decl. Patrick R. de Borja, ¶ 10, ECF #44, ("De Borja Decl.").

These allegations do not manifest an intent to remain indefinitely in any one state.  While the complaint alleges that de Borja "currently is and continues to regularly reside" in California, it qualifies that this is when de Borja, who is president of a foreign company, is "State-side," and importantly omits de Borja's intent to remain in California (or any other state) for "an unspecified or indefinite period of time."  *See Prakash v. American University*, 727 F.2d 1174, 1180 (D.C. Cir. 1984) (requiring that the intent to remain is for "an unspecified or indefinite period of time").  In fact, in his declaration, de Borja affirms that he is retired and splits his time "between the Philippines and *the United States*," without any mention of one state in particular. De Borja Decl. ¶ 5, ECF #44.  (emphasis added).  "Such stateless status destroys complete diversity under § 1332(a)(3)."  *Wynn*, 829 F.3d at 1056 (quoting *Newman–Green*, 490 U.S. at 829) (quotation marks and original alterations omitted).  Again, plaintiffs do not even address de Borja's statelessness.  Plaintiffs' failure to specify de Borja's  state citizenship is fatal to their assertion of diversity jurisdiction, as the party asserting diversity jurisdiction bears the burden of proof.  *Kanter*, 265 F.3d at 858.

### ii.        De Borja—Not Real Party in Interest

Even if de Borja were not stateless, subject matter jurisdiction still fails because he is not a real party in interest to the underlying controversy.

### a.        Article III Standing

Standing has constitutional and prudential considerations.  *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 335 (1990).  "A plaintiff seeking relief in federal court must establish the three elements that constitute the irreducible constitutional

minimum of Article III standing, namely, that the plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Friends of Santa Clara River v. U.S. Army Corps of Engineers*, 887 F.3d 906, 918 (9th Cir. 2018) (citations and quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The injury-in-fact test requires that "the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563.

Defendants argue that de Borja never personally own shares of ERI stock, so he could not have personally suffered an injury in fact. *See* ICTSI Oregon's Mot. Dismiss at 22, ECF #31; Decl. Ramon S. Esguerra ("Esguerra Decl.") ¶ 29, ECF #32. The complaint alleges that in 1989 and 1990, Razon, Jr. and his late father defrauded ERI by making four illegal stock transfers. Complaint ¶ 90, ECF #1. Plaintiffs offer de Borja's declaration that he purchased a single share of ERI stock from MFI in May 2018 for the express purpose of bringing this lawsuit. Pls.' Resp. Opp. Defs.' Mot. Dismiss 85, 85 n.296, ECF #42; De Borja Decl. ¶¶ 9-10, ECF #44 ("I thought that as a [United States] citizen I could alternatively file in the [United States]. . . I volunteered with my siblings to bring the case in the [United States]  I accordingly assumed leadership as [MFI's] President with a separate ERI share commensurately assigned to me individually."); *id.*, Ex. 2, at 2, ECF #44-2 (ERI deed of assignment dated May 24, 2018).

Thus, technically, de Borja has Article III standing. *See In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 156 (2d Cir. 2015) ("Failure to satisfy the contemporaneous ownership requirement [does not] raise a jurisdictional issue under Article

III."); *cf.*, *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008) ("we have expressly held that an assignee can sue based on his assignor's injuries"). However, subject matter jurisdiction is still lacking because, as discussed below, this assignment is collusive and improperly manufactures diversity jurisdiction, and de Borja is otherwise a nominal plaintiff.

### b.      Direct and Derivative Actions, Generally

"One well-established prudential-standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008). A manifestation of this limitation in corporate law is the shareholder standing rule. *Id.* "Although federal law generally controls the question of standing, whether the shareholder's claims are derivative or direct for purposes of the shareholder standing rule is controlled by the law of the state of incorporation. . . ." *Id.* at 762 (citing *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006)). In this case, that would be the Philippines. While Philippine law applies to this prudential standing inquiry, the basic principles of prudential standing, which are similar in the Philippines and United States,[9] are more conveniently explained through United States law.

A corporation and its shareholders are distinct juridical persons. *Pagan v. Calderon*, 448 F.3d 16, 28-29 (1st Cir. 2006) (citation omitted). Even when a shareholder "owns all, or practically all, of the stock in a corporation, such a fact of itself does not authorize him to sue as an individual." *Erlich v. Glasner*, 418 F.2d 226, 228 (9th Cir. 1969) (citing 13 FLETCHER CYC. CORP. § 5910 (1961 rev. vol.)); *Riggins v. Polk Cty.*, 602 F. App'x 765, 768 (11th Cir. 2015)

---

[9]  Plaintiffs observe that "the Philippines' modern-day corporate law . . . is largely modeled after and borrows heavily from its American counterparts." Pls.' Resp. Opp. Defs.' Mot. Dismiss 8-9, ECF #42; *see also* Melo Decl. ¶¶ 6-19, ECF #43 (asserting the Philippine legal system and corporate law is mainly patterned from the American legal system and corporate law).

(holding major shareholder and president of corporation could not bring suit to redress company's injury in his own name); *Pagan*, 448 F.3d at 28-29 ("[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock.").

The law recognizes the rights of shareholders to pursue direct, representative, and individual actions in certain circumstances. *E.g.*, 12B FLETCHER CYC. CORP. § 5908 (Sep. 2019) ("Some examples of claims giving rise to direct actions are claims that a proposed merger, recapitalization, redemption, or similar transaction unfairly affects minority shareholders); *id.* ("A plaintiff alleges a special injury and may maintain an individual action if the shareholder complains of an injury distinct from that suffered by other shareholders or a wrong involving one of the shareholder's contractual rights as a shareholder."); *id.* ("plaintiffs are claiming an injury that was not suffered by all shareholders, but only by minority shareholders, that action is properly classified as representative rather than derivative"); *see also In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234-35 (9th Cir. 2008) (recognizing exception "when a corporation's officers or directors are 'antagonistic to the interests of the shareholder plaintiffs'"); *Pagan*, 448 F.3d at 28 (quoting *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 30 (1st Cir. 1987)) (finding a shareholder may bring an action if it "sustains an injury that 'is peculiar to him alone, and [that] does not fall alike upon other stockholders.'").

However, "[w]here the basis of an action is a wrong to the corporation, redress must be sought in a 'derivative' action."[10] 12B FLETCHER CYC. CORP. § 5908 (Sep. 2019). "A

---

[10] Philippine law allows shareholders to bring derivative actions for the benefit of the corporation. *Cua v. Tan*, G.R. No. 181455-56, 04 December 2009 ("a stockholder may institute

shareholder does not have a [direct or individual] cause of action if he only suffers the same harm as other shareholders." *Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 317 F.3d 16, 20 (1st Cir. 2003). "The corporation is not merely a formal party, but is an indispensable party to the action. The shareholder, as a nominal party, has no right, title or interest in the claim itself." *Id.*; *accord Ross v. Bernhard*, 396 U.S. 531, 538 (1970) ("The corporation is a necessary party to the action; without it the case cannot proceed. Although named a defendant, it is the real party in interest, the stockholder being at best the nominal plaintiff.").

"The primary purposes of requiring a shareholder to bring its claims derivatively is to avoid a multiplicity of suits and to prevent the inequitable distribution of possible recoveries among those other than the shareholder with an interest in the corporation, including the inequitable displacement of such as the claims of creditors and thereby subvert the creditors' priority." *Strougo v. Bassini*, 282 F.3d 162, 169, 171 (2d Cir. 2002); *see also generally Massey*, 464 F.3d at 647 (discussing policies supporting "a firm distinction between direct and derivative actions").

### c.    Direct Action: Collusive Assignment

To the extent de Borja asserts a direct action, the purchase of a single share of ERI stock is collusive and may not serve as a basis for subject matter jurisdiction.

The federal anti-collusion statute, 28 U.S.C. § 1359, provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment *or otherwise*, has been improperly or collusively made or joined to invoke the jurisdiction of such court." (emphasis added). Section 1359 is aimed at preventing parties from "manufacturing diversity jurisdiction."

---

a suit in behalf of himself and other stockholders for the benefit of the corporation"); Melo Decl. ¶ 55, ECF #43.

*Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992) (citing *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 828-29 (1969)).  Some types of assignments "warrant particularly close scrutiny," including assignments "between parent companies and subsidiaries, and assignments by corporations to their officers or directors, which 'are presumptively ineffective to create diversity jurisdiction.'"  *Id.* at 809-10 (quoting *Dweck v. Japan CBM Corp.,* 877 F.2d 790, 792 (9th Cir. 1989)).

The Supreme Court's decision in *Kramer* is instructive.  There, a Panamanian corporation contracted with a Haitian corporation, and when a dispute over the contract arose, the Panamanian corporation sold its entire interest in the contract to an attorney from Texas for $1 with a promise to pay back 95% of any net recovery on the assigned cause of action.  *Id.* at 824.  The Texas attorney sued the Haitian corporation in federal court in Texas, and the Supreme Court ultimately found the assignment was "improperly or conclusively made" under § 1359:

> If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties.  Such 'manufacture of Federal jurisdiction' was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors.

*Id.* at 828-29.

> Similarly, in *Syms v. Castleton Indus., Inc.,* 470 F.2d 1078, 1079 (5th Cir.1972), a family trust, with mother and son acting as trustees, invested a large sum of money with the defendants.  Defendants failed to pay federal income tax on profits for the investment.  Mother and all the trust members assigned their interest in the action against the defendants to her son.  No consideration was given for the assignments and the son admitted that any recovery would be shared with all members of the trust.  *Id.* at 1081–82.  The court concluded that the assignment was collusive and dismissed the action.  The court relied on the lack of consideration for the transfer and noted that the assignors effectively retained an interest in the proceeds.  *Id.* at 1082.  Once more the assignee failed to carry the burden of establishing genuine diversity.

*Dweck*, 877 F.2d at 793.

Courts consider several factors in determining whether an assignment is improper or collusive.  Keeping in mind that the "objective fact of who really is the party in interest is the most important thing to be determined," courts ask:

> were there good business reasons for the assignment; did the assignee have a prior interest in the item or was the assignment timed to coincide with commencement of litigation; was any consideration given by the assignee; was the assignment partial or complete; and was there an admission that the motive was to create jurisdiction.

*Attorneys Trust v. Videotape Computer Prod., Inc.*, 93 F.3d 593, 595-96 (9th Cir. 1996); *see also Yokeno*, 973 F.2d at 810 (stating "the district court must delve deeper into the totality of circumstances surrounding the assignment" when deciding whether an assignment was improper or collusive under § 1359).

Here, de Borja's family holding company is MFI.  Compl. ¶ 6, ECF #1.  In 2016, MFI enlisted the local prosecutor to bring a case for *estafa* (i.e., swindling) against Razon, Jr. in the Philippines.  *See* Hernandez Decl., Ex. A, at 3, ECF #37-1.  De Borja's sibling, Francis Roa de Borja, was chair and president of MFI at the time.  *Id.* at 1; Hernandez Decl., Ex. A, at 3, ECF #74-1; Decl. Alfredo de Borja ¶ 5, ECF #45.  After the Philippine prosecutor dismissed the *estafa* case, de Borja assumed command of MFI and on May 24, 2018, purchased from Francis Roa de Borja a single share of ERI stock for 100 Philippine pesos, or about $2, for the express purpose of suing in the United States.  De Borja Decl., Ex 2, at 2, ECF #44-2; De Borja Decl. ¶¶ 9-10, ECF #44 ("I thought that as a [United States] citizen I could alternatively file in the [United States]. . . I volunteered with my siblings to bring the case in the [United States]  I accordingly assumed leadership as [MFI's] President with a separate ERI share commensurately assigned to me individually."); *id.*, Ex. 2, at 2, ECF #44-2 (ERI deed of assignment dated May

24, 2018).  After the ERI stock assignment,[11] de Borja and MFI then brought this suit in the

District of Oregon against Razon, Jr., along with ICTSI and ICTSI Oregon, who were not

defendants in the *estafa* case, under the guise of diversity jurisdiction.  *See* Hernandez Decl., Ex.

A, at 3, ECF #37-1 at 3 (*estafa* case caption lists only Razon, Jr. as defendant).

This stock purchase bears nearly all the hallmarks of a collusive assignment.  First, there

was no good business reason for de Borja to purchase a single share of ERI—a defunct

corporation that has not conducted business since 1987 and was dissolved by the Philippine SEC

in 2000.  Compl. ¶¶ 56, 118, ECF #1.  During oral argument, plaintffs' counsel asserted that

there was a legitimate purpose in the corporate restructure and assignment because it put MFI in

a better position to manage this litigation both physically and logistically.  Transcript 17-19, ECF

#101.  These are not "good *business* reasons."  *Attorneys Trust*, 93 F.3d at 595-96 (emphasis

added).

Second, de Borja had no prior interest in ERI apart from his holdings in MFI.  Again,

assignments "between parent companies and subsidiaries, and assignments by corporations to

their officers or directors 'are presumptively ineffective to create diversity jurisdiction[,]'"

*Yokeno*, 973 F.2d at 809-10 (quoting *Dweck*, 877 F.2d at 792), regardless if the parent company,

subsidiary, or corporation had a "prior interest" in the assigned asset.  An assignment by the

principal of a family holding company to his brother, when both brothers otherwise hold prior

interests in the company, is similarly entitled to little weight.  *See, e.g.*, *McCulloch v. Velez,* 364

F.3d 1, 3 (1st Cir. 2004) (finding that an assignment between a corporation and a shareholder

---

[11] While this assignment was for a share of ERI stock and not for the right to sue like the
assignment in *Kramer*, the effect is the same because MFI is party to this action.  As the federal
anti-collusion statute prohibits manufacturing diversity jurisdiction by "assignment *or
otherwise*," the assignment is prohibited.  28 U.S.C. § 1359.

triggers a presumption of collusion); *Dweck*, 877 F.2 at 792 (discounting prior financial interest

in disputed contract); *Syms,* 470 F.2d at 1082, 1090 (5th Cir. 1972) (discounting fact that son had

prior interest in family trust when mother and siblings assigned their interests in the trust to the

son).

Third, de Borja's purchase coincided with the commencement of this litigation.

Plaintiffs' legal expert, retired Justice Jose Armando R. Melo ("Melo"), opines that de Borja may

institute "an individual suit for a wrong that 'is done to him personally and not to the other

stockholders or the corporation.'"  Melo Decl. ¶ 59, ECF #43 (quoting *Cua v. Tan*, G.R. No.

181455-56, 4 December 2009).  He further opines,

> *As alleged extensively in the complaint*, Patrick R. de Borja also filed claims for
> damages and cash dividends against Enrique Razon Jr. and ICTSI for the
> misappropriated shares of stock he owns in ERI *at the time of the fraudulent
> execution* of the Deeds of Assignment.  Thus, it is my opinion that this is a valid
> cause of action of an individual suit.

Melo Decl. ¶ 60, ECF #43 (emphasis added).  Absent from this assertion, however, is any

citation to the complaint.  Plaintiffs likewise assert de Borja is "an individual shareholder of ERI

apart from his interest as a shareholder of MFI," but do not address *when* he became an

individual shareholder.  Pls.' Resp. Opp. Defs.' Mot. Dismiss 86, ECF #42.  Plaintiffs and their

legal expert fail to account for this vast discrepancy in the timing of de Borja's ownership of ERI

stock.  The assignment shows de Borja purchased one share of ERI stock on May 24, 2018.  MFI

changed its corporate structure by appointing de Borja as principal and president after the

adverse outcome in the *estafa* case.  An alteration in corporate structure occurring between when

the dispute arose and when the plaintiff sues shows intent to manufacture diversity jurisdiction. *See N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1449 (9th Cir. 1986).[12]

Fourth, de Borja paid his sibling Francis Roa de Borja $2 for his personal stake in ERI. This is nominal consideration, as the share's proportional value based on plaintiffs' $37 million demand is about $4,500.[13]  Compl. 124 ¶ A (prayer for relief), ECF #1; *see also FNBN-RESCON I LLC v. Ritter*, No. 2:11-CV-1867-GMN-VCF, 2012 WL 3929950, at *5 (D. Nev. Sept. 6, 2012) (collecting cases and stating "courts have used valid yet nominal consideration as evidence that an assignment was made in order to obtain subject matter jurisdiction improperly").

Fifth, the assignment was partial.  Where an assignment is partial, "the courts are very likely to find that there is an improper or collusive transfer because the prior owner still has an interest." *Attorneys Trust*, 93 F.3d at 597.  MFI owns 8,213 shares of ERI stock.  *See* Compl., Ex. 2, at 1 (500 shares purchased January 22, 1976); *id.* at 3 (1,807 shares purchased January 22, 1976); *id.* at 5 (4,106 shares purchased September 2, 1977); *id.* at 7 (1,800 shares purchased January 1976).  De Borja's purchase of a single share of ERI stock is only one hundredth of one percent[14] of MFI's interest in ERI.  This is about as partial of an assignment as there can be, as MFI retains 99.987% of its interest in ERI during this litigation.  *Cf. Charles Schwab Corp. v. Banc of Am. Sec. LLC*, No. 10-CV-03489-LHK, 2011 WL 864978, at *3 (N.D. Cal. Mar. 11, 2011) (finding assignment that gave "all rights, title and interest" in the assignor's claims to the

---

[12] Plaintiffs' counsel clarified at oral argument that an *estafa* case is a mixed criminal and civil action where the prosecutor drives the litigation.  It follows that this action is not pure parallel litigation, at it is civil only.  Although not prototypical parallel litigation, MFI nonetheless sued here while that case was already in progress.

[13] $4,528.71 = .0122% * $37,194,310.15.

[14] 0.0122% = 1 share/((500+1,807+4,106+1,800 shares) * 100%.

assignees to be a complete assignment irrespective of separate agreement that paid assignor 100% of litigation proceeds).

Finally, de Borja expressly admitted the sole purpose of the assignment and corporate restructure were to fulfill his family's desire to sue in the United States. De Borja Decl. ¶¶ 9-10, ECF #44; *see* Decl. Alfredo de Borja ¶ 9, ECF #45.

All of these facts point to the conclusion that de Borja is "just a strawman for all practical purposes." *Attorneys Trust*, 93 F.3d at 597.

Defendants did not develop this argument in their motion for sanctions; however, they raised it in their motion to dismiss. ICTSI Oregon's Mot. Dismiss 26, ECF #31. Notably, plaintiffs have not responded to it *at all*.[15] "The party asserting jurisdiction bears the burden of demonstrating a diversity-creating assignment was not improper or collusive," *Reinhart Oil & Gas, Inc. v. Excel Directional Techs., LLC*, 463 F. Supp. 2d 1240, 1244 (D. Colo. 2006) (citation omitted). Yet, plaintiffs have not even attempted to meet their burden. Because the assignment is collusive and improper under 28 U.S.C. § 1359, it cannot be considered for establishing the court's subject matter jurisdiction.

### d.    Derivative Action: No Contemporaneous Ownership

The question remains whether de Borja may bring claims derivatively, or directly or derivatively on behalf of MFI.

---

[15] The "obligation to inquire sua sponte into its own subject matter jurisdiction . . . coupled with the easily discernible congressional intent behind the enactment of section 1359, impels a federal court, when confronted with suspicious circumstances, to make every effort to determine whether a party has been insinuated into an action in order to allow the litigants artificially to invoke the court's jurisdiction." *McCulloch*, 364 F.3d at 5.

Rule 8 of the Philippine Interim Rules of Procedure for Intra-Corporate Controversies ("Philippine IRPICC") governs derivative actions in the Philippines. Section 1 of Rule 8 provides:

> A stockholder or member may bring an action in the name of a corporation or association, as the case may be, provided, that:
>> (1) He was a stockholder or member *at the time the acts or transactions subject of the action occurred* and the time the action was filed;
>> (2) He exerted all reasonable efforts, and alleges the same with particularity in the complaint, to exhaust all remedies available under the articles of incorporation, by-laws, laws or rules governing the corporation or partnership to obtain the relief he desires;
>> (3) No appraisal rights are available for the acts or acts complained of; and
>> (4) The suits is not a nuisance or harassment suit.

Philippine IRPICC Rule 8, Section 1 (emphasis added); *see also Villamor v. Umale*, G.R. No. 172843 (S.C., Sept. 24, 2014) (Phil.) (requiring contemporaneous ownership). The contemporaneous ownership requirement "stems from the equitable nature of derivative litigation which allows a shareholder to step into the corporation's shoes." *Lewis v. Chiles,* 719 F.2d 1044, 1047 (9th Cir. 1983). The primary purpose of the rule is "to prevent courts from being used to litigate purchased grievances." *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 297 (2d Cir. 2003) (quoting 7C FED. PRAC. & PROC. CIV. § 1828 (2d ed.)) (internal quotation marks omitted).

Because de Borja did not own ERI stock in 1989 and 1990 when the alleged injuries were inflicted, he cannot meet the first requirement of bringing a derivative action under Philippine law. No amendment could cure this factual deficiency. Thus, de Borja lacks prudential standing to bring derivative claims.

###### e.    No direct or derivative action on behalf of MFI

Under the Philippine authority cited by plaintiffs, the only real party in interest is ERI.[16]

Arguably, because MFI was a minority shareholder[17] of ERI when the Razons allegedly

defrauded ERI, MFI could assert derivative claims.  However, even assuming MFI could bring a

direct or derivative action as a real party in interest, de Borja would still at best be a nominal

party, and subject matter jurisdiction still would not lie under § 1332(a)(3), which requires a

United States citizen plaintiff.  *Jungil Lee*, 220 F. App'x at 495; *accord Faysound*, 878 F.2d at

294.

###### 1.    Philippine Derivative Actions and Exceptions

Melo opines that MFI, as a minority stockholder of ERI, may bring a derivative action.

Melo Decl. ¶ 56, ECF #43 (citing *Strategic Alliance Development Corporation v. Radstock

Securities Limited*, G.R. No. 178158, 04 December 2009).  Defendants concede that MFI might

conceivably sustain a derivative action against foreign defendants on behalf of ERI.

Melo also notes that the Philippine Supreme Court recognizes individual suits between

stockholders:  "[I]ndividual suits may be instituted by a stockholder 'against another stockholder

for wrongs committed against him personally, and to determine their individual rights'. . . ."

Melo Decl. ¶ 58, ECF #43 (quoting *Guy v. Guy*, G.R. No. 189186, 05 September 2012).  As an

---

[16]  Defendants moved to dismiss plaintiffs' derivative claims for failure to state a claim.  Their
arguments that MFI's claims must be brought derivatively and that ERI is the only real party in
interest are well taken.  Plaintiffs do not appear to state derivative claims, as they do not even
purport to meet all but the first requirement to bring a derivative action under Rule 8 of the
Philippine IRPICC.  However, because the operative inquiry here is whether plaintiffs have met
their burden to counter defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter
jurisdiction (within the first prong of the Rule 11 test), *Christian*, 286 F.3d at 1127, the court
assumes without deciding that MFI could have amended the complaint to allege a derivative
action on behalf of ERI.

[17]  The complaint alleges that MFI acquired a 5% stake in ERI in 1976.  Compl. ¶ 68, ECF #1.

example of a cause of action belonging to an individual stockholder personally, Melo cites

*Villamor v. Umale*, G.R. No. 172843, 24 September 2014.  In *Villamor*, the Philippine Supreme

Court stated

> Individual suits are filed when the cause of action belongs to the individual
> stockholder personally, and not to the stockholders as a group or to the
> corporation, e.g., denial of right to inspection and denial of dividends to a
> stockholder.  If the cause of action belongs to a group of stockholders, such as
> when the rights violated belong to preferred stockholders, a class or representative
> suit may be filed to protect the stockholders in the group.

*Id.*  However, the *Villamor* court went on to hold that the respondent

> did not allege any cause of action that is personal to him.  His allegations are
> limited to the facts that [petitioner's] directors waived their rights to rental income
> in favor of Villamor's law firm without consideration and that they failed to take
> action when Villamor refused to turn over the amounts to PPC. These are wrongs
> that pertain to PPC. . . . Only the corporation, or arguably the stockholders as a
> group, is entitled to these reliefs, which should have been sought in a proper
> derivative suit filed on behalf of the corporation.

*Id.*

So too here.  No individual shareholder could have sustained a particularized injury from

the four illegal stock transfers because they concern shares of ERI stock.  The only entity directly

injured from these transactions is ERI, or "arguably the stockholders as a group." *Villamor v.*

*Umale*, G.R. No. 172843, 24 September 2014; *accord Massey*, 464 F.3d at 646 (holding harm to

a corporation that injures a shareholder only through a diminution in share price cannot amount

to a "distinct and separate injury" because all shareholders are essentially harmed in the same

manner).

Some United States courts have recognized exceptions to the shareholder standing rule

when there is antagonism between the derivative plaintiffs and the corporation's directors.  *See*

*In re Digimarc*, 549 F.3d at 1234; *N. Tr. Co. v. Bunge Corp.*, 899 F.2d 591, 594 (7th Cir. 1990)

("Shareholders who bring derivative suits can establish diversity based on their own citizenship

even though they are suing on behalf of the corporation.").  Others have recognized an exception

for fraud against minority shareholders.  *See Massey*, 464 F.3d at 646.  Here, the complaint

would support the application of such an exception, which includes allegations that the "self-

dealing transfers [were] . . . ostensibly made to deceive MFI and other similarly situated

stockholders."  Compl. ¶ 94, ECF #1; *id.* ¶ 172 ("[The Razons] deceived and otherwise placed

the Razons' interests ahead of ERI and its shareholders, including Plaintiffs"); *id.* ¶ 176

(minority shareholders like Plaintiffs); *id.* ¶ 180 ("fraud committed by amalgamation and transfer

injured ERI and its other shareholders including Plaintiffs"); *id.* ¶ 185 (minority shareholders

like Plaintiffs); *id.* ¶ 193 (same); *id.* ¶ 204 (same); *id.* ¶ 268 (same).  However, plaintiffs only sue

for their pro-rata share of ERI, not for the losses sustained by all ERI minority shareholders.  *See*

*id.* ¶¶ 120-22.  It is unclear whether a Filipino court would recognize these exceptions.  But even

if these were valid exceptions and MFI was a real party in interest, they provide no basis for de

Borja to be a real party in interest.

## 2.    Corporate Citizenship

De Borja's status as MFI's president and corporate representative is immaterial for the

purpose of diversity jurisdiction.  To hold otherwise would make an end-run around the well-

established rule that a corporation is deemed "a citizen of every State and foreign state by which

it has been incorporated and of the State or foreign state where it has its principal place of

business."  28 U.S.C. § 1332(c)(1).  Allowing a corporation to designate a representative to sue

on its behalf—substituting the representative's citizenship for its own—would all but empower

the corporation to choose its citizenship at any time.  That is not the law.  *Lincoln Prop. Co. v.*

*Roche*, 546 U.S. 81, 94 (2005) ("The jurisdictional rule governing here[, 28 U.S.C. §1332(c)(1),]

is unambiguous and it is not amenable to judicial enlargement.").

Melo opines that MFI's "powers and rights may only be exercised by a person authorized by the Board of Directors," and that de Borja is that person here. Melo Decl. ¶ 57, ECF #43. He continues: "A review of Philippine jurisprudence reveals that juridical entities, which were stockholders of corporations, were parties to derivative actions filed on behalf of its principal corporations." Melo Decl. ¶ 58, ECF #43. He cites two Philippine Supreme Court cases, *Filipinas Port Services. Inc. v. Go*, G.R. No. 161886, 16 March 2007, and *Republic Telecommunications Holdings, Inc. v. Santiago*, G.R. No. 140338, 07 August 2007, and then affirms that "[t]he legal standing of said corporations, as represented by its individual stockholder, to institute a derivative action on behalf of its principal corporation was never questioned before the Philippine Supreme Court." *Id.* The implications being, apparently, that either de Borja has standing to sue on behalf of ERI or he has standing to sue on behalf of MFI on behalf of ERI. (Again, plaintiffs merely incorporate by reference Melo's declaration without any further clarification or analysis.)

Melo appears to conflate the principle that a corporation may only act through its officers and agents with the principle that a stockholder may bring a derivative action on behalf of a corporation. But Melo's conclusions would violate the principle that a corporation is a separate legal entity that must sue or be sued in its own name. The case that Melo cites, *Republic Telecommunications*, pertains to mootness. G.R. No. 140338, 07 August 2007. It does not lend support to Melo's position that MFI may file a derivative suit directly in its name, and it certainly gives no support to plaintiffs' proposition that MFI may designate de Borja as a representative to bring a derivative suit in his own name. There, A2 Telecommunications International Holding Co. Pte. Ltd. and Beauty Fortune Investments Ltd. ("petitioners"), owned minority stakes in Republic Telecommunications Holdings, Inc. ("Retelcom"). Petitioners sued members of

Retelcom's board of directors to enjoin the execution of three resolutions with "grossly disadvantageous provisions." Whereas petitioner's representatives were Retelcom board members who dissented to the resolutions, they were not themselves named parties to the lawsuit. *Id.*

The petitioners asked the Philippine Supreme Court to decide whether they "had the capacity and authority to file the derivative suit directly or on behalf of [the corporation]," but the Philippine Supreme Court did not address the issue because the petitioners did not raise it before the Court of Appeals and the Court of Appeals did not discuss or resolve it. The only issue considered by the Philippine Supreme Court was whether the Philippine SEC erred in upholding a preliminary injunction enjoining the execution of the three resolutions. However, the Philippine Supreme Court held that the issue was "rendered moot and academic" because the party enabling the resolutions "withdrew from the negotiating table." *Id.*

The other case cited by Melo, *Filipinas Port Services*, lends even less support to his position. There, the Philippine Supreme Court stated:

> Under the Corporation Code, where a corporation is an injured party, its power to sue is lodged with its board of directors or trustees. But an individual stockholder may be permitted to institute a derivative suit in behalf of the corporation in order to protect or vindicate corporate rights whenever the officials of the corporation refuse to sue, or when a demand upon them to file the necessary action would be futile because they are the ones to be sued, or because they hold control of the corporation. In such actions, *the corporation is the real party-in-interest while the suing stockholder, in behalf of the corporation, is only a nominal party.*

G.R. No. 161886, 16 March 2007 (citations omitted) (emphasis added).

The court went on to hold that Cruz, the corporate stockholder plaintiff, had the "necessary legal standing" to institute the derivative suit, but "Cruz is only a nominal party while Filport is the real party-in-interest." *Id. Filipinas* relied on *Asset Privatization Trust v. CA*, 360 Phil. 768, 804-805 (1998), which held, "Settled is the doctrine that in a derivative suit, the

corporation is the real party in interest while the stockholder filing suit for the corporation's behalf is only a nominal party."

These authorities support the notion that MFI may be a nominal party to the derivative action filed on behalf of ERI because MFI is an individual stockholder of ERI. They do not support the position that de Borja may be party to this derivative action because he is the president and a shareholder of MFI and MFI owns stock in ERI. They also do not support the proposition that, even if MFI were a real party in interest, de Borja could somehow stand in MFI's shoes and assert its claims.

Plaintiffs also appear to invoke language that trustees use when suing on behalf of a trust. *See* Compl. ¶ 6, ECF #1. Trustees of express trusts who have legal title to trust property and who sue in their names can establish diversity based on their citizenship rather than that of the trust's beneficiaries. *Navarro Savings,* 446 U.S. at 464. A trustee may be a real party to the controversy where it "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.*

But MFI is not a trust. MFI is clearly a "nongovernmental corporate party," as plaintiffs filed a corporate disclosure statement indicating MFI has no parent corporation, and no publicly held corporation owns 10% or more of MFI's stock. *See* FED. R. CIV. P. 7.1; Pls.' Corporate Disclosure Statement, ECF #2. Trusts do not have to comply with the disclosure requirements of Rule 7.1. Trusts are not organized under a state's law and do not have a principal place of business. Compl. ¶ 6 (alleging MFI is incorporated under Philippine law and headquartered in Manila, Philippines). Moreover, the test for determining whether a trustee is a real party in interest or merely a "naked trustee" depends on the authority granted to the trustee in the trust document. *Navarro Savings*, 446 U.S. at 464. Plaintiffs offer no such document.

### 3.    Double Derivative Standing

Plaintiffs contend they "have double derivative standing to assert *derivative* claims against Defendant alter egos one and all on behalf of ERI and MFI. . . . ERI's standing as a shareholder of ICTSI and it's alter egos extends to MFI and de Borja as equitable owners of ERI, and for that matter, to de Borja and his siblings as equitable owners of MFI."  Pls.' Resp. Opp. Defs.' Mot. Dismiss 86-87 nn.301-03, ECF #42.  They do not rely on Philippine law for this proposition but instead cite to Fletcher Cyclopedia Corporations and cases from Texas and Illinois.  Even if a Philippine court recognized this doctrine, it provides no basis for de Borja's standing here.

"Shareholders of a parent or holding company, including minority shareholders, have standing to maintain a 'double derivative' action to enforce a cause of action belonging to a subsidiary company."  13 Fletcher Cyc. Corp. § 5977 (Sept. 2019).  "A double derivative suit is based upon injury suffered indirectly by a parent corporation, in which a plaintiff-shareholder does have an interest, as a result of injury to the subsidiary."  *Id.*  "This means that the power to bring suit flows directly from the injured subsidiary, but both the subsidiary and the holding company would have to fail, refuse or be unable to redress the injury to the subsidiary."  *Brown v. Tenney*, 125 Ill. 2d 348, 356 (1988); *id.* at 357 ("The right to bring the derivative action falls to the shareholder when the holding company fails to protect its property and assets.").

It is unclear precisely how plaintiffs would have the court apply the double derivative standing doctrine here.  To the extent they allege ERI is a holding company and ICTSI is an operating company together with ICTSI Oregon and Razon, Jr., *see* compl. ¶¶ 88, 115, 244, such an application has no effect on de Borja's status as a real party in interest.

Alternatively, to the extent plaintiffs believe that because de Borja owns shares in MFI, he has double derivative standing to sue on behalf of ERI, the doctrine is inapplicable because ERI is not a subsidiary or operating company of MFI and MFI has not failed to protect its property and assets. First, MFI is not a parent or holding company of ERI. MFI only purportedly owns a 5% stake in ERI, and there is no indication MFI and ERI have a parent–subsidiary relationship. MFI does not own a majority of ERI shares, and it does not exercise control, supervision, or influence over the policies and management of ERI. *See Brown*, 125 Ill. 2d at 355 ("A holding company is a corporate body with a concentrated ownership of shares of stock in another company, by which it exercises control, supervision or influence over the policies and management of the company whose shares it holds."). MFI has not even been informed of ERI's governance since 1978. Compl. ¶¶ 72, 89, ECF #1 ("Once [de Borja's father] refused Razon Sr.'s [1978] turnover demand, there was a falling out. The Razons effectively operated ERI as they pleased without informing Plaintiffs. As a result, Plaintiffs did not even know that ERI's operational know how and experience had been exchanged for ICTSI shares.").

Second, MFI can sue *and is suing* in its own name. MFI *has* recourse. Unlike the parent corporations in *Brown* and *Sneed v. Webre*, 465 S.W.3d 169, 190 (Tex. 2015), MFI has not refused to bring an action. And how could it refuse under the circumstances here? De Borja is the president of MFI. His interests and MFI's interests are in complete alignment. Even if ERI were a subsidiary of MFI, which it is not, for de Borja to be a proper plaintiff, MFI would have to be a defendant.

> In conformance with the guiding principles behind the single derivative action, the injured subsidiary, being the real party in interest, must be made a party to the double derivative action as a defendant and the shareholder, enforcing the derivative right belonging to the holding company, must also name the holding company as a party defendant.

*Brown*, 125 Ill. 2d at 357 (internal citations and quotation marks omitted).

Plaintiffs' theory of double derivative standing (i.e., extending standing down the chain to the equitable interest holders of the entity in interest) would let a corporation bringing a derivative action choose its citizenship by simply selecting amongst the citizenship of its shareholders.  The *Brown* and *Sneed* courts applied the double derivative standing doctrine when failure to do so would leave the shareholder plaintiffs without remedy.  *Sneed*, 465 S.W.3d at 192; *Brown*, 125 Ill. 2d at 356.  Here, MFI has a remedy, as do MFI's shareholders indirectly through MFI.  It is just that MFI cannot pursue its remedy here for lack of subject matter jurisdiction.

For all these reasons, the complaint is both legally and factually baseless from an objective perspective for lack of subject matter jurisdiction.

### 4.    Silence as Concession

Plaintiffs do not respond to many of defendants' arguments, several of which, if accepted, would destroy subject matter jurisdiction over this action.  This deafening silence could be construed as a concession that defendants' arguments have merit.  *E.g.*, *Hakakha v. CitiMortgage, Inc.*, No. EDCV 15-1320 JGB (SPx), 2015 WL 4873561, at *8 (C.D. Cal. Aug. 13, 2015) (collecting cases); *Winnemucca Indian Colony v. United States*, No. 13-874, 2014 WL 3107445, at *1 n.3 (Fed. Cl. July 8, 2014) (construing party's failure to respond to arguments regarding subject matter jurisdiction as concession that no subject matter jurisdiction exists); *K & K Enterprises of Cent. Fla., Inc. v. Tampa Port Auth.*, No. 807CV-1384-T-24-MAP, 2007 WL 2826246, at *2 (M.D. Fla. Sept. 25, 2007) (same); *see also YP Recovery Inc. v. Yellowparts Europe, SL*, No. 15-CV-3428, 2016 WL 4549109, at *9 (N.D. Ill. Sept. 1, 2016) (finding plaintiff failed to meet burden to invoke subject matter jurisdiction by failing to address

argument plaintiff was not a real party in interest because his suffered only a derivative injury). As defendants argue, "[t]he only reasonable inference under these circumstances is that Plaintiffs did not respond because they understand that there are no merits to their subject matter jurisdiction allegations." Defs.' Reply Supp. Mot. Sanctions 6, ECF #81.

Nonetheless, as discussed above, the court explored any basis for subject matter jurisdiction to give plaintiffs and their counsel the benefit of the doubt. Yet the court found no merit in any of plaintiffs' conceivable arguments.

### 5. Reasonable and Competent Inquiry

Having found that, from an objective perspective, the complaint is factually and legally baseless with respect to subject matter jurisdiction, the court must determine "if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian*, 286 F.3d at 1127 (internal citation and quotation marks omitted). A reasonable and competent inquiry would have revealed that there was a lack of subject matter jurisdiction before plaintiffs' counsel signed and filed the complaint. As a practical matter, there was no time pressure to rush to court because plaintiffs have known of their claims since at least 2004. Tellingly, plaintiffs have repeatedly avoided discussing subject matter jurisdiction in any meaningful way. Plaintiffs invoked diversity jurisdiction under 28 U.S.C. § 1332(a)(2), which is patently inapplicable, and never put forth any other basis to establish the court's power to hear this dispute. The collusive nature of the assignment of one share of ERI stock to de Borja and MFI's corporate restructure are especially troubling because they suggests plaintiffs knew they had some burden to carry but then intentionally obfuscated their inability to do so.

Plaintiffs' post-filing conduct shows near total disregard for their obligation to establish subject matter jurisdiction and confirms the lack of competence exercised in handling this issue.

They pressed for discovery related to personal jurisdiction without even acknowledging questions regarding subject matter jurisdiction had been raised—and then failed to engage with most of the dispositive arguments set forth above.  To the extent they did engage, they mostly relied on the declaration of their Philipine legal expert and raised the double derivative standing doctrine without offering much in the way of helpful argument.

Plaintiffs' counsel's representations that they proceeded in good faith are irrelevant; the operative standard is an objective one.  *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 549, 554 (1992) (imposition of sanctions is determined by the reasonableness of inquiry into the law and facts); *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 892 F.2d 802, 812 (9th Cir. 1989), *aff'd,* 498 U.S. 533 (1991) ("Subjective intent is irrelevant under Rule 11.").  Regardless, nothing that plaintiffs' attorneys offer shows they made a reasonable or competent inquiry into this court's subject matter jurisdiction before filing suit.

One of plaintiffs' attorneys, Walter Scott, mentions subject matter jurisdiction in his declaration in support of plaintiffs' opposition to the motion for sanctions, but only *once*.  He affirms that, for the past 14 years, he has worked with a "dream team" of lawyers representing the Philippines in environmental litigation against a mining company.  Decl. Walter Scott, Jr. ("Scott Decl.") ¶ 7, ECF #76.  This work led to "comprehensive settlement proposals."  *Id.* ¶ 8. Scott affirms:

> This settlement proposal went dormant in the fall of 2015 in favor of further prospective proceedings.  I believe this ongoing representation further belies Defendants' suggestion of proceeding frivolously without appropriate attention to detail concerning issues involving . . . subject matter jurisdiction. . . . While I am not a liberty to openly share the comprehensive proposed settlement documents, I can make them available to the Court for *in camera* inspection should the Court be so inclined to review the results of my work product.

*Id.* ¶ 8.  It should go without saying that "attention to detail" in some other litigation has no bearing on the reasonableness and competence of the inquiry that went into determining whether subject matter jurisdiction exists in this action.

Scott also affirms that he met and interviewed "each and all of the de Borja siblings on multiple occasions and both collectively and separately."  *Id.* ¶ 49.  But he does not say whether he investigated the factual basis for subject matter jurisdiction.  For example, he does not say whether he investigated de Borja's United States' domicile or whether he instructed Francis R. de Borja to collusively assign a share of ERI stock to plaintiff de Borja and to restructure MFI with de Borja as president and principal.  Finally, to the extent Scott's statement that he thoroughly reviewed and analyzed "jurisdiction" (*id.* ¶ 51) refers to subject matter jurisdiction, he once again appears to conflate personal jurisdiction with subject matter jurisdiction. Plaintiffs' local counsel goes no further than affirming he reviewed and commented on the pleadings and plaintiffs' response in opposition to the motion for sanctions.  *See* Decl. Joshua Ross ¶¶ 6-7, ECF #77.

The court held oral argument to provide plaintiffs' counsel an additional opportunity to explain wether a reasonable and competent inquiry was made into subject matter jurisdiction. Transcript 4, ECF #101.  Scott discussed an "imputed contacts" personal jurisdiction analysis, and could not identify the statute that formed the basis of the court's subject matter jurisdiction. *Id.* at 6-8  He later acknowledged 28 U.S.C. § 1332(a)(3) was the best fit for diversity jurisdiction, predicated on de Borja as a United States plaintiff and ICTSI Oregon as a United States defendant.  *Id.* at 9.  Scott did not explain why the complaint failed to evince de Borja's intent to remain in California, but asserted California was de Borja's home at the time of filing. *Id.* at 14.  When asked about the collusive nature of de Borja's purchase of a single share of ERI

stock from his brother, Scott argued the purchase was not purely collusive, but was made to allow de Borja to better manage the litigation. *Id.* at 17-19. This argument was not persuasive. Based on what has been presented, the court cannot conclude that a reasonable and competent inquiry into subject matter jurisdiction was made here.

### C.      Personal Jurisdiction

Because the court's analysis regarding subject matter jurisdiction is dispositive of the entire motion for sanctions, it is unnecessary to further consider the parties' arguments regarding personal jurisdiction. "While the focus of Rule 11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources." *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 392 n.9 (3d Cir. 2016). "Rule 11(c)(6) requires only that a district court explain the basis of its order when the court imposes a sanction, not when it denies sanctions." *Id.* at 391; *see* FED. R. CIV. P. 11(c)(6) ("An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction."). Nevertheless, plaintiffs' assertion of personal jurisdiction does not appear to be frivolous.

Plaintiffs' alter ego, agency, and successor-in-interest theories would collapse defendants into a single entity and disregard all corporate fictions to establish both general- and specific personal jurisdiction. The parties' briefing on these issues read like competing law review articles in a post-*Daimler* personal-jurisdiction symposium. They cite treatises, law review articles, and case law from across the country to make the case that this action fits or does not fit within accepted jurisdictional paradigms or the confines of *Daimler*'s "exceptional case." *See Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Plaintiffs' arguments are undoubtedly a

stretch but appear to be an amalgamation of a good-faith requests for an extension of existing law.

**D.      Statute of Limitations**

Again, it is unnecessary to reach the issue of statute of limitations.  Nevertheless, it appears that due to the Philippine *void ab initio* doctrine, the statute of limitations does not bar at least some of plaintiffs' claims.

**1.      Relevant Facts**

The complaint alleges Razon, Jr. and his late father defrauded ERI in 1989 and 1990 by making four illegal stock transfers:

> Transfer 1—on September 5, 1989, Razon Sr., acting as Chairman of ERI, assigned 22,725,000 common shares of ERI stock in ICTSI to Sureste Realty Corporation through its President Razon Jr.;

> Transfer 2—on September 5, 1989, Razon Jr., acting as President of ERI, assigned 20,313,674 common shares of ERI's stock in ICTSI to Razon Industries, Inc. through its Chairman Razon Sr.;

> Transfer 3—on April 10, 1990, Razon Jr., acting in an undisclosed capacity for ERI, assigned 7,700,000 common shares of ERI's stock in ICTSI to his father, Razon Sr. personally; and

> Transfer 4—on April 10, 1990, Razon Sr., acting as Chairman of ERI, assigned 2,300,000 common shares of ERI's stock in ICTSI to Razon Jr. personally.

Compl. ¶ 90, ECF #1 (short titles omitted).  The allegations continue, "Since first being partly exposed and confronted in 2004, Razon, Jr. has repeatedly evaded various efforts to resolve or otherwise impose liability upon him for his acts and omissions." *Id.* ¶ 123.  "Not until late 2004 were Plaintiffs finally made aware of what had happened when copies of the assignments were obtained and given to them. . . . *Id.* ¶ 126.  The complaint also alleges Razon, Jr. lied to plaintiffs that records of these transactions were destroyed, withheld documents surrounding the transactions from plaintiffs, including an April 10, 1990 compromise settlement agreement

between Razon, Jr.'s late father and a member of the Presidential Commission on Good

Government ("1990 Compromise"), and otherwise evaded plaintiffs' attempts to learn the truth

of ERI's dissolution.  *Id.* ¶¶ 99, 123-129.  Razon, Jr. then strung plaintiffs along under false

pretenses, including by making settlement offers, *id.* ¶¶ 130-136, and "deliberately and

persistently denied and concealed the underlying facts and circumstances giving rise to

Plaintiffs' claims."  *Id.* ¶ 154.

The complaint alleges any applicable statute of limitations or prescription periods were

tolled until September 2016 when plaintiffs finally secured a copy of the 1990 Compromise.  *Id.*

¶ 99, n.70.  Plaintiffs commenced this lawsuit on June 26, 2018.

Notably, however, MFI sent a demand letter to Razon, Jr. on October 7, 2004, based on

the same conduct at issue in the complaint.  Compl., Ex. 6, at 1-2, ECF #1-10 ("2004 demand

letter" or "demand letter").  The demand letter identifies the second, third, and fourth fraudulent

transactions, and alleges the transfers were "unauthorized, ultra-vires, without any or sufficient

consideration and ostensibly made to defraud the other stockholders of E. Razon, Inc."  *Id.* at 2.

It continues:

> Under the circumstances, demand is hereby made upon you and the heirs of
> Enrique Razon, Sr. to compensate our client, their proportionate and rightful share
> of ten percent (10%) of the ICTSI shares which were fraudulently and illegally
> transferred from E. Razon, Inc. to yourselves and your family-owned corporation,
> inclusive of all pre-emptive rights, dividends and other appurtenances thereto.
> Unless this demand is met within ten (10) days from receipt hereof, we will be
> constrained to take the appropriate legal actions to protect the rights and interests
> of our client.

*Id.*  The 2004 demand letter also indicates that the "deeds of assignment of shares of stock" for

all three transfers were attached.  *Id.*

2.      **Summary of Arguments**

In the complaint, plaintiffs invoked seven tolling and accrual doctrines to argue that the statutes of limitations had not run: adverse interest or domination, the discovery rule, fraudulent concealment, equitable estoppel, the doctrine of continuing torts, interruption by written demand, and the prohibition against lulling.  Compl. ¶ 153 (i)-(vii), ECF #1.

In its motion to dismiss, ICTSI Oregon argued that even assuming a ten-year statute of limitations applies, all plaintiffs' claims are clearly time-barred because plaintiffs knew enough information to send the demand letter in 2004.  ICTSI Oregon's Mot. Dismiss 27, ECF #31.  In response to the motion to dismiss, plaintiffs argued the following equitable tolling and accrual doctrines made the complaint timely:  discovery rule, fraudulent concealment, equitable estoppel, adverse interest/domination, continuous offense, and *void ab initio* doctrine.  Pls.' Resp. Opp. Defs.' Mot. Dismiss 88, ECF #42.  Plaintiffs did not address the 2004 demand letter.

Defendants renewed their argument in their motion for sanctions.  Defs.' Mot. Sanctions 7, ECF #73.  In response to the motion for sanctions, plaintiffs accuse defendants of ignoring their allegations.  Pls.' Resp. Opp. Mot. Sanctions 21, ECF #75.  They also contend that whether the statute of limitations has run is a "quintessential jury question," and incorporate by reference 13 paragraphs from the declaration of their Philippine legal expert.  *Id.* 22 n.75  Walter Scott affirms he investigated the law regarding statute of limitations.  *See* Scott Decl. ¶¶ 6, 51, ECF #76.  However, neither plaintiffs, their attorneys, nor their legal expert even acknowledge the existence of the 2004 demand letter.  In their reply, defendants argue that whether a claim is time barred is a question of law when material facts are undisputed, and otherwise renew their previous arguments.  ICTSI Oregon's Reply Supp. Mot. Dismiss 20, ECF #78; Defs.' Reply Supp. Mot. Sanctions 3, ECF #81.

### 3.    Philippine Statutes of Limitations

Oregon law provides that "if a claim is substantively based . . . [u]pon the law of one other state, the limitation period of that state applies." O.R.S. 12.430(1)(a). Oregon law further provides that if "the statute of limitations of another state applies to the assertion of a claim in this state, the other state's relevant statutes and other rules of law governing tolling and accrual apply in computing the limitation period." O.R.S. 12.440.

Here, Philippine substantive law forms the basis of plaintiffs' claims. Thus, under O.R.S. 12.430(1)(a) and O.R.S. 12.440, the Philippine statute of limitations periods and Philippine rules of law governing tolling and accrual apply. *See Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018, 1022-23 (9th Cir. 2009).

The statutes of limitations at issue here are governed by various provisions of the Philippine Civil Code, and they range from four to ten years for all of plaintiffs' claims. *See* Philippine Civil Code Art. 1144 (ten years); Art. 1145 (six years); Art. 1146 (four years); Decl. Esguerra Decl. ¶¶ 7, 12, ECF #32.

### 4.    Discussion

#### i.    2004 Letter

Defendants assert plaintiffs could have discovered their injury as early as 1990 because the deeds of assignment were publicly available with the Philippine Securities and Exchange Commission, as were ICTSI's articles of incorporation, which showed ERI held a 46% stake of ICTSI at the time. Esguerra Decl. ¶¶ 15-17, ECF #32. Setting this aside, plaintiffs *actually discovered* their injury by at least 2004 when MFI sent the demand letter to Razon, Jr. divulging knowledge of three of the illicit stock transfers and threatening to sue. The demand letter

indisputably shows MFI had actual knowledge of the harms, causation, and tortious conduct for three of the four fraudulent transfers since at least 2004.

Thus, even applying a ten-year statute of limitations across the board, none of the tolling or accrual doctrines (except those described below) could make this lawsuit timely. The most generous application of these doctrines would only toll the prescriptions periods until 2014 at the latest. Plaintiffs' and their legal expert's failure to address the 2004 demand letter compromises the entirety of their legal analysis on tolling and accrual doctrines and needlessly obfuscates the relevant inquiries. *See* Melo Decl. ¶¶ 34-42, ECF #43; *e.g.*, *Maneclang v. Baun*, G.R. No. 27876, 22 April 1992 (equitable estoppel); *People v. Duque*, G.R. No. 100285, 13 August 1992 (discovery rule); *Presidential Commission on Good Government v. Desierto*, G.R. No. l35119, 2l October 2004 (discovery rule).

Despite invoking Philippine law, plaintiffs cite cases in state and federal courts from across the United States to support their argument. None of the doctrines cited in those cases toll the statute of limitations after a plaintiff sends a demand letter concerning the conduct at issue in the complaint and reveals actual knowledge of injury, causation, and tortious conduct. *E.g.*, *Greene v. Legacy Emanuel Hospital*, 335 Or. 115 (2002) (discovery rule); *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (fraudulent concealment and equitable estoppel); *Knight v. Wells Fargo Bank, N.A.*, 717 Fed. Appx. 749, 750 (9th Cir. 2018) (unpublished) (continuous offense); *F.D.I.C. v. Smith*, 328 Or. 420, 432 (1999) (adverse domination).

ii.    Philippine *void ab initio* doctrine

However, plaintiffs' claims may not be time barred in light of Philippine's *void ab initio*

doctrine.  Philippine law distinguishes between void contracts and voidable contracts.  Philippine

Civil Code Arts. 1390, 1409.  Under Article 1409:

> The following contracts are inexistent and void from the beginning:
> (1) Those whose cause, object or purpose is contrary to law, morals, good customs, public order or public policy;
> (2) Those which are absolutely simulated or fictitious;
> (3) Those whose cause or object did not exist at the time of the transaction;
> (4) Those whose object is outside the commerce of men;
> (5) Those which contemplate an impossible service;
> (6) Those where the intention of the parties relative to the principal object of the contract cannot be ascertained;
> (7) Those expressly prohibited or declared void by law.

*Id.* Art. 1409.  Under Article 1410, "The action or defense for the declaration of the inexistence

of a contract does not prescribe."  *Id.* Art. 1410.

Plaintiffs argue that "[e]ach of the four *sub rosa* assignments is null and void *ab initio* as

alleged.  Prescription accordingly is a *non sequitur* and altogether inapplicable as untenable

because an action which seeks to declare the nullity or inexistence of a contract does not

prescribe."  Pls.' Resp. Opp. Defs.' Mot. Dismiss 89, ECF #42.  In support, plaintiffs rely on four

cases where Philippine courts deemed void either a conveyance of real property where the

property had already been conveyed or where the party conveying the property had no right to do

so in the first place.  *Banaga v. Soler*, G.R. No. 149051 (S.C., June 30, 2006) (Phil.) (land survey

fraud); *Carino v. Court of Appeals*, G.R. No. L-417661, 31 July 1987 (deed to real property);

*Azarcon v. Vallarta*, G.R. No. L-43679 (S.C., Oct. 28, 1980) (Phil.) (certificates of title for parcel

of irrigated rice land); *Dir. of Lands v. Animas*, G.R. No. L-37682 (S.C., Mar. 29, 1974) (Phil.)

(conveyance of timberlands).  These cases deal with quieting title to parcels of land.

Defendants contend Philippine courts do not apply this doctrine outside the context of real property. ICTSI Oregon's Reply Supp. Mot. Dismiss 21, ECF #78. However, Articles 1409 and 1410 are not restricted to any one subject matter, and several Philippine courts apply the doctrine in circumstances like those at issue here. For example, in *Strategic Alliance Development Corp. v. Radstock Securities Limited et al.*, G.R. No. 178158, December 4, 2009 (en banc), the Philippine Supreme Court held that a publicly owned franchise company's compromise agreement, which was made to satisfy a fictitious 20-year old obligation and resulted in a 10 billion peso fraud on the Filipino people, was inexistent and *void ab initio* such that the action for recovery was not time-barred. *See also Yuchengo v. Velayo*, G.R. No. L-50439, July 20, 1982 (stock purchase agreement for majority stake in tourism business was *void ab initio* when seller did not seek prior approval from department of tourism, a condition precedent to operating a tourism business); *Rivera v. Litam & Co*, G.R. No. L-16954, April 25, 1962 (fraudulent transfer of decedents' shares of stock made by children to estate to shield estate from creditors were void).

Here, whether the four illegal stock transfers fit into one or more of Article 1409's subsections is unclear because the record was never developed as to that issue. Because the Philippine *void ab initio* doctrine might apply, the court cannot conclude that objectively the complaint is not legally or factually baseless for being time-barred.[18]

---

[18] Plaintiffs also do not allege defendants expressly waived or renounced any defense of prescription in their favor under *Development Bank of the Philippines*, G.R. No. L-48889, May 11, 1989. However, there may be a factual issue whether Razon, Jr. could have tacitly renounced the right to raise a statute of limitations defense under Philippine Civil Code Article 1112. *See* Melo Decl. ¶ 32, ECF #43.

### III.    Award of Rule 11 Sanctions

Defendants' motion for sanctions complies with Rule 11's safe harbor requirement, as defendants provided plaintiffs and their counsel with a draft of the motion 21 days before filing it with the court. *See* Ross Decl. ¶ 7, ECF #77 (indicating plaintiffs' counsel received a draft sanctions motion on February 8, 2019, 24 days before the motions for sanction was filed on March 4, 2019). The motion also complies with Rule 11(c)(2) and LR 7-1(b) in that it is made separately and describes the specific conduct that allegedly violates Rule 11(b). Having found the motion for Rule 11 sanctions is properly before the court and that Rule 11 has been violated, the court next must decide what, if any, sanction should be awarded.

Defendants seek reimbursement for all of their attorneys' fees and costs, including the cost of hiring an expert in Philippine law. Defs.' Mot. Sanctions 31, 31 n. 30, ECF #73. They argue these expenses can be traced to the very filing of the complaint because the lack of subject matter jurisdiction infected the entire pleading, i.e., there is a causal link between the misconduct and all of the expenses incurred in defending this lawsuit. *See Goodyear Tire & Rubber*, 137 S. Ct. at 1187-89 (discussing but-for causation standard applicable to assessment and allocation of litigation expenses). The Ninth Circuit has affirmed awards of Rule 11 sanctions "for filing a baseless complaint because the lack of subject matter jurisdiction should have been clear from well-established law." *Lauser v. City Coll. of San Francisco*, 359 F. App'x 755, 757 (9th Cir. 2009); *accord Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 801 (9th Cir. 1986) ("We conclude OPCA violated Rule 11 by filing a complaint in the federal district court in Alaska which it must have known completely lacked a factual foundation for subject matter jurisdiction.").

Defendants also argue that any sanctions award should be imposed jointly and severally against plaintiffs, their attorneys, and the attorneys' law firms.  Defs.' Mot. Sanctions 31, ECF #73.  "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." FED. R. CIV. P. 11(c)(1).  Rule 11's primary focus is on attorneys, whose signatures certify to the court that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b)(2); *see id.* 11(c)(5)(A) ("The court must not impose a monetary sanction against a represented party for violating Rule 11(b)(2)").  However, Rule 11 reaches anyone—attorneys and litigants alike—whose signatures certify to the court that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the paper is not being presented for any improper purpose, the factual contentions have or will likely have evidentiary support, and denials of factual contentions are warranted or reasonably based on lack of information.  *See id.* 11(b)(1), (3)–(4); *id.* 11(c)(1) ("the court may impose an appropriate sanction on any attorney, law firm, or *party* that violated the rule or is responsible for the violation") (emphasis added); *see also* FED. R. CIV. P. 11 advisory committee's note to 1993 amendment ("Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client.").

Nonetheless, the court's authority to impose Rule 11 sanctions is discretionary.  *See* FED R. CIV. P. 11(c)(1) ("[T]he court *may* impose an appropriate sanction.") (emphasis added). Courts consider many factors in deciding whether to impose sanctions, including:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or

> only one particular count or defense; whether the person has engaged in similar
> conduct in other litigation; whether it was intended to injure; what effect it had on
> the litigation process in time or expense; whether the responsible person is trained
> in the law; what amount, given the financial resources of the responsible person,
> is needed to deter that person from repetition in the same case; what amount is
> needed to deter similar activity by other litigants.

FED. R. CIV. P. 11 advisory committee's note to 1993 amendment.  Courts also consider the

ability to pay.  *Yagman v. Baden*, 796 F.2d 1165, 1184-85 (9th Cir. 1986).  Rule 11 further

rquires that any sanction "must be limited to what suffices to deter repetition of the conduct or

comparable conduct by others similarly situated."  FED. R. CIV. P. 11(c)(4).

A hearing would be helpful to discuss these factors and assist the court in analyzing how

best to exercise its discretion under the circumstances.

## IV.   Award of § 1927 Sanctions

Defendants also contend that the conduct of plaintiffs' counsel's is sanctionable and

separately justifies imposing an award.  The issue of whether counsel acted in bad faith and

whether sanctions should be imposed under § 1927 will be discussed at a subsequent hearing.

## V.   Plaintiff's Motion for Countersanctions

Plaintiffs' moved for countersanctions under Rule 11 and § 1927 on page 28 of their

response to defendants' motion for sanctions.  Pls.' Resp. Opp. Mot. Sanctions 28, ECF #75.

Plaintiffs do not represent that they complied with Rule 11's safe harbor requirement by

providing defendants with a copy of the motion 21 days before filing it with the court.  FED. R.

CIV. P. 11(c)(2).  Nor do they certify that they conferred in good faith to resolve the dispute in

violation of LR 7-1(a)(1)(A).  The motion also violates the requirements of Rule 11(c)(2) and LR

7-1(b) that it be made separately.  Plaintiffs' motion for countersanctions is therefore denied.

# ORDER

With respect to defendants' motion for sanctions (ECF #73), the court finds the complaint is legally and factually baseless from an objective perspective for lack of subject matter jurisdiction and no reasonable and competent inquiry was made into subject matter jurisdiction. The court further orders a hearing to resolve the question of whether it should exercise its discretion to award sanctions pursuant to Rule 11 and whether counsel acted in bad faith for purposes of 28 U.S.C. § 1927. Plaintiffs' motion for countersanctions (ECF #75) is denied.

IT IS SO ORDERED.

DATED  September 30, 2020.


<u>          /s/ Youlee Yim You          </u>
Youlee Yim You
United States Magistrate Judge