UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PATRICK R. DE BORJA, individually and
MAKILING FARMS, INC., a Philippine
corporation,

               Plaintiffs,

    v.

ENRIQUE K. RAZON, JR., individually;
INTERNATIONAL CONTAINER
TERMINAL SERVICES, INC., a Philippine
corporation; ICTSI OREGON INC., an Oregon
corporation; and JOHN AND/OR JANE DOES
1-20,

               Defendants.

Case No. 3:18-cv-01131-YY

OPINION AND ORDER

YOU, Magistrate Judge.

In this case, plaintiffs Patrick R. de Borja ("de Borja") and Makiling Farms, Inc. ("MFI")

brought suit against defendants Enrique K. Razon, Jr., International Container Terminal Services,

Inc. ("ICTSI") (collectively "foreign defendants"), and ICTSI Oregon, Inc., over four fraudulent

stock transfers made in 1989 and 1991. By prior order, this court dismissed the action without

prejudice under the doctrine of *forum non conveniens* because the Philippines constitutes an

adequate alternative forum and the private and public interest factors weighed heavily toward

1 – OPINION AND ORDER

dismissal.  Findings and Recommendations ("F&R"), ECF 83, *adopted by* Order, ECF 90.  The Ninth Circuit affirmed that decision in *De Borja v. Razon*, 835 F. App'x 184 (9th Cir. 2020).

This court then considered defendants' motion for sanctions (ECF 73) and found that, in violation of Federal Rule of Civil Procedure 11, the complaint was legally and factually baseless from an objective perspective for lack of subject matter jurisdiction and no reasonable and competent inquiry was made into subject matter jurisdiction.  Opinion and Order 4, 39, ECF 102.  As detailed in that decision, the court found that plaintiffs inexplicably failed to address nearly all of defendants' arguments regarding subject matter jurisdiction despite having multiple opportunities.  *Id.* at 15.  Defendants argued plaintiffs' silence should be treated as a concession that their position lacked merit.  Still, this court "explored any basis for subject matter jurisdiction to give plaintiffs and their counsel the benefit of the doubt."  *Id.* at 40.  After finding no basis for subject matter jurisdiction, the court ordered a hearing to determine whether sanctions should be imposed and whether plaintiffs' counsel had acted in bad faith in violation of Rule 11 and 28 U.S.C § 1927.  *Id.* at 53-54.

Attorney Peter Jarvis thereafter filed a notice of appearance on behalf of one of plaintiffs' attorneys, Joshua Ross, and his law firm, and requested leave to file supplemental briefing.  The court allowed the parties to submit supplemental briefing and additional declarations, and held oral argument.  Plaintiffs and plaintiffs' other attorney, Walter Scott, joined in the supplemental briefing filed by Ross and his law firm.  Joinder Notice, ECF 123.  For the sake of clarity, plaintiffs, plaintiffs' counsel, and plaintiffs' counsels' law firms are referred to collectively as plaintiffs unless otherwise separately identified.

After considering all of the briefing and arguments of the parties and counsel, the court WITHDRAWS its September 30, 2020 Opinion and Order (ECF 102), DENIES defendants'

Motion for Imposition of Sanctions (ECF 73), and DENIES plaintiffs' motion for countersanctions (ECF 75).

## I.    The Court's Authority to Reconsider Prior Rulings

Plaintiffs argue, "[w]hether this Memorandum and supporting materials are accepted as supplemental briefing, as a motion for reconsideration or on other grounds, there is no basis for sanctions against Plaintiffs or their counsel." Suppl. Sanctions Br. 24, ECF 116.

A motion for reconsideration is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. AC & S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A 'manifest injustice' is defined as 'an error in the trial court that is direct, obvious, and observable.'" *Brooks v. Tarsadia Hotels*, No. 3:18-CV-2290-GPC-KSC, 2020 WL 601643, at *5 (S.D. Cal. Feb. 7, 2020) (quoting *Smith v. City of Quincy*, No. CV-09-328-RMP, 2011 WL 1303293, at *1 (E.D. Wash. Apr. 5, 2011)); *see also Manifest Injustice*, BLACK'S LAW DICTIONARY (11th ed. 2019)) (defining "manifest injustice" as an error in the trial court that is "direct, obvious, and observable").

"Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1179 (D. Or. 2008) (quoting *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665

(9th Cir. 1999).  "Motions for reconsideration are generally disfavored, and may not be used to present new arguments or evidence that could have been raised earlier."  *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) ("A motion for reconsideration 'may *not* be used to raise arguments or evidence for the first time when they could reasonably have been raised earlier in the litigation.'") (quoting *Kona Enterprises*, 229 F.3d at 890).

Plaintiffs argue the court erred in concluding that plaintiff de Borja is stateless.  Suppl. Sanctions Br. 8, ECF 116; *see* Opinion and Order 18-19, ECF 102.  Defendants argued de Boja is a "stateless person" in their reply in support of the motion for sanctions.  ICTSI Oregon's Reply Mot. Dismiss 5, ECF 7.  At the August 26, 2020 hearing on the motion, plaintiff's counsel stated that "California is [de Borja's] home," and if "clarification [was] needed . . .  that's something that we would like the opportunity to do."  August 26, 2020 Tr. 14, ECF 101.  However, the court did not expressly give plaintiffs leave to file a supplental declaration before issuing its opinion and order on September 30, 2020.  That constitutes clear error and was manifestly unjust.

Plaintiffs also assert that the court went too far in "*sua sponte*" considering the collusive stock transfer issue when it was not an argument asserted by defendants.  Suppl. Sanctions Br. 16, ECF 116.  The court disagrees with the characterization that it acted *sua sponte*.  As this court stated before, while "[d]efendants did not develop this argument in their motion for sanction, . . . they raised it in their motion to dismiss."  Opinion and Order 29, ECF 102 (citing ICTSI Oregon's Mot. Dismiss 26, ECF 31).  Where defendant raised the issue, this court could not ignore it and had to analyze it through to its logical conclusion.  Nevertheless, defendants did not reassert the argument in its motion for sanctions.  This constitutes another basis for the court

to allow further briefing to reconsider its ruling in that regard. Under the circumstances, disallowing plaintiffs the opportunity to fully address the collusion issue would constitute a "manifest injustice."[1]

The court appreciates the frustration that defendants undoubtedly feel as a result of having to relitigate the motion for sanctions, as well as the time and cost of doing so. Yet, the imposition of sanctions is arguably the most serious action the court can take against the parties or counsel in a case. Here, providing plaintiffs with the fullest opportunity to respond to the motion for sanctions ensures that a fair and correct decision is reached.

## II.    Authority for Sanctions

The court has authority to sanction both litigants and attorneys under Rule 11 and its inherent power. Additionally, 28 U.S.C. § 1927 provides the court with authority to sanction attorneys.[2] An "entry of sanctions is reviewed for an abuse of discretion." *Primus Automotive Fin. Services, Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).

---

[1] The court also observes that during the August 26, 2020 hearing, which was scheduled during the pandemic, one of plaintiff's attorneys represented that he had "faced some personal hardship as a result of [the pandemic] in my family." August 26, 2020 Tr. 5, ECF 101. Further, this court is aware that counsel experienced other health issues in the last year. Due to the personal nature of that information, it is unnecessary to describe the circumstances in more detail. Suffice to say, the situation was serious enough that it gave the court concern about issuing a decision without considering plaintiffs' supplemental briefing.

[2] The law in the Ninth Circuit is clear that magistrate judges may impose Rule 11 sanctions when they are nondispositive of a claim or defense of a party. *U.S. v. Rivera-Guerrero*, 377 F.3d 1064, 1067 (9th Cir. 2004) (quoting *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 747 (9th Cir. 1990)); *see also* FED. R. CIV. P. 72(a), (b) (distinguishing nondispositive from dispositive matters); 28 U.S.C. § 636(b)(1)(A), (B) (setting out magistrate judge's jurisdiction over eight categories of dispositive pretrial motions); *Gomez v. U.S.*, 490 U.S. 858, 873-74 (1989) (indicating the list of eight categories of dispositive pretrial motions in § 636(b)(1)(A) is not exhaustive). Here, as in *Maisonville*, the imposition of sanctions is not dispositive of a claim or defense of a party because the action has already been dismissed, and the motion for sanctions is all that remains for the court to decide. 902 F.2d at 747 ("[T]he Rule 11 sanctions imposed here were not dispositive of a claim or defense of a party. In fact, the parties had already settled the

A.      **Rule 11**

Rule 11 governs papers filed with the court.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41

(1991).

> By presenting to the court a pleading, written motion, or other paper[,] . . . an
> attorney . . . certifies that to the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the circumstances:
> > (1) it is not being presented for any improper purpose, such as to harass,
> > cause unnecessary delay, or needlessly increase the cost of litigation;
> > (2) the claims, defenses, and other legal contentions are warranted by
> > existing law or by a nonfrivolous argument for extending, modifying, or
> > reversing existing law or for establishing new law;
> > (3) the factual contentions have evidentiary support or, if specifically so
> > identified, will likely have evidentiary support after a reasonable
> > opportunity for further investigation or discovery;
> > (4) the denials of factual contentions are warranted on the evidence or, if
> > specifically so identified, are reasonably based on belief or a lack of
> > information.

FED. R. CIV. P. 11(b).

Rule 11 sanctions are governed by "an objective standard of reasonable inquiry."

*Chambers*, 501 U.S. at 47.  The court considers whether the complaint is legally or factually

baseless from an "objective perspective."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th

Cir. 2002).

Under Rule 11, motions for sanctions "must be made separately from any other motion

and must describe the specific conduct that allegedly violates Rule 11(b)."  FED. R. CIV. P.

---

case prior to Dombroski's filing his motion for reconsideration.  Thus, under Rule 72(a), the
Rule 11 sanctions imposed in this case are properly characterized as non-dispositive.").

Sanctions imposed under § 1927 and the court's inherent power may similarly be non-
dispositive, as they are here.  The Ninth Circuit has analogized sanctions under § 1927 and its
inherent power to sanctions under Rule 11 and Rule 37.  *See Stanley v. Woodford*, 449 F.3d
1060, 1064 (9th Cir. 2006) ("the policies undergirding Rule 37(a) sanctions are not relevantly
different from those justifying sanctions under § 1927 or a court's inherent powers"); *Grimes v.
City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991) ("we see no material
distinctions between Rule 11 sanctions and Rule 37 [discovery] sanctions") (quoting
*Maisonville*, 902 F.2d at 748) (alteration in *Grimes*).

11(c)(2).  The rule also contains a safe harbor:  the party served with the motion must be given

21 days after service to withdraw or correct the challenged conduct.  *Id.*

### B.    28 U.S.C. § 1927

Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in

any court of the United States or any Territory thereof who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the excess

costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C.

§ 1927.  This statute only applies to attorneys.  *Chambers*, 501 U.S. at 41.

"To impose sanctions under section 1927, the court must make a finding of bad faith."

*Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1080 (D. Or. 2010), *as amended* (May 13,

2010) (citing *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir.

1990)).  Bad faith is present when an attorney knowingly or recklessly raises a frivolous

argument or argues a meritorious claim to harass an opponent.  *Id.* (citing *Soules v. Kauaians for

Nukolii Campaign Comm.*, 849 F.2d 1176, 1185-86 (9th Cir. 1988)).

### C.    Inherent Power

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to

manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash

R. Co.*, 370 U.S. 626, 630-31 (1962)).  "That authority includes 'the ability to fashion an

appropriate sanction for conduct which abuses the judicial process.'"  *Id.* (quoting *Chambers*,

501 U.S. at 44-45).

To impose sanctions pursuant to its inherent power, the court must make a finding of bad

faith.  *Chambers*, 501 U.S. at 47.  Because the court's inherent authority to sanction is an

"undelegated power[, it] should be exercised with especial restraint and discretion." *Goodyear Tire & Rubber*, 137 S. Ct. at 1186 n.5 (internal citation and quotation marks omitted). "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers*, 501 U.S. at 50.

### D.    Nature of Sanctions

Sanctions imposed under Rule 11 and § 1927 "must be compensatory rather than punitive in nature."[3] *Goodyear Tire & Rubber*, 137 S. Ct. at 1186. As such, courts "can shift only those attorney's fees incurred because of the misconduct at issue." *Id.* Nonetheless, "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award." *Id.* at 1188.

## III.    Choice of Law

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *In re Cty. of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). The forum state's choice-of-law rules control which state's substantive law applies. *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010).

The parties agree Philippine substantive law applies here, but for different reasons. Comp. ¶ 163, ECF 1; ICTSI Oregon's Mot. Dismiss 9, ECF 31; Pls.' Resp. Opp. Defs.' Mot. Dismiss 7-8, ECF 42. Plaintiffs and foreign defendants incorrectly argue that Oregon follows the

---

[3] The court has authority to award punitive sanctions, meaning that the award may exceed the loss resulting from the misconduct. However, the imposition of punitive sanctions requires additional procedural safeguards "applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof." *Goodyear Tire & Rubber*, 137 S. Ct. at 1186. Defendants do not seek punitive sanctions here.

common-law "most significant relationship" test set forth in the Restatement (Second) of

Conflicts of Laws and application of that test mandates that plaintiffs' claims are governed by

Philippine substantive law.  Pls.' Resp. Opp. Defs.' Mot. Dismiss 8, ECF 42; Foreign Defs.'

Mot. Dismiss 27, ECF 27.  ICTSI Oregon, represented by the same counsel as foreign

defendants, correctly rely on Oregon's statutory scheme to arrive at the same result.  ICTSI

Oregon's Mot. Dismiss 8-9, ECF 31; *see* O.R.S. 15.300–.380 (governing choice of law for

contracts) & O.R.S. 15.400–.460 (governing choice of law for torts and other noncontractual

claims).[4]

Plaintiffs asserted twenty-two claims, including for fraud, breach of fiduciary duty, civil

conspiracy, misappropriation, and conversion.  These claims sound in tort.  Thus, the court

applies the statutory scheme set forth in O.R.S. 15.400–.460.  *See* O.R.S. 15.405.

O.R.S. 15.440(3) provides:

> (3) If the injured person and the person whose conduct caused the injury were
> domiciled in different states and the laws of those states on the disputed issues
> would produce a different outcome, the law of the state designated in this
> subsection governs.
>> (a) If both the injurious conduct and the resulting injury occurred in the
>> same state, the law of that state governs if either the injured person or the
>> person whose conduct caused the injury was domiciled in that state.
>> …
>> (c) If the injurious conduct occurred in one state and the resulting injury in
>> another state, the law of the state of conduct governs.

---

[4]  Oregon adopted new choice-of-law rules governing contracts in 2001 and new choice-of-law
rules governing torts and other noncontractual claims in 2009.  *See* 2009 Or. Laws ch. 451 (S.B.
561); 2001 Or. Laws ch. 164, *see also Portfolio Recovery Assocs., LLC v. Sanders*, 366 Or. 355,
365-66, 366 n.7 (2020) (explaining the evolution of Oregon's choice-of-law rules); *R.M. v. Am.
Airlines, Inc.*, 338 F. Supp. 3d 1203, 1210 (D. Or. 2018) ("As of January 1, 2010, Oregon courts
follow a statutory choice of law methodology."); *Lewis v. Fedex Ground Package System, Inc.*,
No. 0702-01363, 2008 WL 4144389 (Or. Cir. (Multnomah) Aug. 15, 2008) ("In 2001, Oregon
became the first state with a common law tradition to codify choice-of-law for contracts.").

Here, all of the alleged misconduct occurred in the Philippines, *see* Compl. ¶¶ 83-107, and the resulting injury occurred in the Philippines and California.  MFI, Razon, Jr., and ICTSI are domiciled in the Philippines.  *Id.* ¶¶ 6-7, 23.  De Borja is domiciled in California, *see* Second Decl. Patrick de Borja ¶¶ 2-6, ECF 119,  and ICTSI Oregon is domiciled in Oregon.  *See* Compl. ¶¶ 31-32.  Thus, Philippine substantive law applies.

## IV.    Defendants' Motion for Sanctions (ECF 73)

Defendants move for sanctions against plaintiffs pursuant to Federal Rule of Civil Procedure 11 and the court's inherent power, claiming that the complaint was frivolous because it was barred by the statute of limitations and failed to establish personal and subject matter jurisdiction.  Defs.' Mot. Sanctions 7, 14, 18, ECF 73.[5]  Defendants also contend that sanctions are warranted against both plaintiffs and their attorneys under Rule 11, the court's inherent authority, and § 1927 because they engaged in harassing motions practice with the intent to "overwhelm" defendants and this court.  *Id.* at 21.

### A.    Defendants' Motion for Sanctions Must be Reached on the Merits

As the court dismissed the underlying action without addressing the statutes of limitations, personal jurisdiction, or subject matter jurisdiction, the court asked the parties whether it would be an abuse of discretion to decline to reach those issues in ruling on defendants' motion for sanctions, which included additional bases for sanctions.  Order, ECF 92.  Defendants responded that the court could and should address these issues.  *See* Defs.' Suppl.

---

[5] Defendants' motion for sanctions complies with Rule 11's safe harbor requirement, as defendants provided plaintiffs and their counsel with a draft of the motion 21 days before filing it with the court.  *See* Ross Decl. ¶ 7, ECF 77 (indicating plaintiffs' counsel received a draft sanctions motion on February 8, 2019, 24 days before the motions for sanction was filed on March 4, 2019).  The motion also complies with Rule 11(c)(2) and LR 7-1(b) in that it is made separately and describes the specific conduct that allegedly violates Rule 11(b).  Therefore, the motion is properly before the court.

Brief, ECF 95.  Plaintiffs responded "no," but then concluded that the court "presumably must at least consider the issues to determine whether they are non-frivolous," without citing to authority reconciling their answer with this presumption.  Pls.' Suppl. Brief 2-3, ECF 93.

Even where the underlying action has been dismissed, the court retains authority to decide a motion for sanctions.  *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-98 (1990).  The imposition of sanctions is "not a judgment on the merits of an action.  Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."  *Cooter & Gell*, 496 U.S. at 396.

Some authority supports the notion that a complaint may be deemed nonfrivolous for purposes of Rule 11(b) when it is dismissed without prejudice on procedural grounds.  In *Sussman v. Bank of Israel*, 56 F.3d 450 (1995), the Second Circuit affirmed a district court's refusal to consider whether a complaint was frivolous on a Rule 11 sanctions motion after dismissing the action under *forum non conveniens*.  The district court "declined to rule on [the defendant's] contention that the allegations of the complaint were unsubstantiated, noting that it did not reach the merits in dismissing the complaint on forum non conveniens grounds, and declining to expend more judicial resources in exploring them now."  *Id.* at 454 (internal citation, quotation marks, and original alterations omitted).  On appeal, the defendant argued that the district court abused its discretion by refusing to consider whether the complaint was frivolous for the purpose of imposing sanctions.  *Id.* at 455-56.  The Second Circuit disagreed, finding that because the dismissal was without prejudice to the merits of the claims and the plaintiff could pursue them in a different jurisdiction, the claims "must be deemed nonfrivolous" for the Rule 11 analysis.  *Id.* at 457.  Likewise, in *SD Holdings, LLC v. Aircraft Owners & Pilots Ass'n, Inc.*, the

defendant moved for Rule 11 sanctions on grounds the complaint was factually baseless. No. 3:13-CV-01296-AC, 2014 WL 3667881, at *8 (D. Or. July 22, 2014). The court dismissed the action for lack of personal jurisdiction and denied the motion for sanctions reasoning the motion should "be determined by the court ultimately deciding the merits of the action." *Id.* at *10. However, the court retained jurisdiction to allow the defendants to renew their motion for sanctions if the plaintiff failed to pursue its claims in the proper jurisdiction. *Id.* at *11.

Here, the court also dismissed the action without prejudice under *forum non conveniens*. The court did not impose conditions on the dismissal, but plaintiffs were already pursuing parallel litigation in the Philippines. Unlike *Sussman* and *SD Holdings*, however, defendants' motion for sanctions does not turn solely on the merits of the claims, but instead on matters particular to suing here, i.e., subject matter and personal jurisdiction. The allegedly sanctionable conduct is independent of the merits and cannot be sanctioned by a Philippine court.

Thus, because no other court will have the opportunity to determine the propriety of plaintiffs' actions in bringing suit here, the court reaches the issues necessary to determine whether sanctionable conduct has occurred. Otherwise, potential abuses of our judicial system would go unchecked.

**B.    Rule 11 and the Complaint**

"Filing a complaint in federal court is no trifling undertaking. An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law) and that it is not filed for an improper purpose." *Christian*, 286 F.3d at 1127. "Where . . . the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the

attorney has conducted a reasonable and competent inquiry before signing and filing it." *Id.* (internal citation and quotation marks omitted).

After reviewing hundreds of pages of briefing, declarations, and exhibits and examining voluminous case law, including Philippine law, the court finds, as explained in detail *infra* Sections IV.C–.E, that the complaint is not legally or factually baseless from an objective perspective with regard to subject matter jurisdiction, personal jurisdiction, or the statutes of limitations. Because defendants' motion for sanctions under Rule 11 fails at step one of the *Christian* inquiry, it is unnecessary to reach step two regarding the sufficiency of counsel's pre-filing inquiry. Likewise, it is unnecessary to reach many of the issues addressed in the withdrawn Opinion and Order (ECF 102) because "Rule 11(c)(6) requires only that a district court explain the basis of its order when the court imposes a sanction, not when it denies sanctions."[6] *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 (3d Cir. 2016). "While the focus of Rule 11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources." *Id.* at 392 n.9.

### C.    Subject Matter Jurisdiction

Plantiffs' assertion of subject matter jurisdiction is not objectively baseless.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal quotation marks omitted)). "It is to be presumed that a cause lies outside of federal courts' limited jurisdiction,

---

[6] "An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." Fed. R. Civ. P. 11(c)(6).

and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1091 (9th Cir. 2014) (citing *Kokkonen*, 511 U.S. at 377). "Subject matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Objections to the court's jurisdiction "may be resurrected at any point in the litigation," and courts are obligated to consider *sua sponte* the requirements that go to subject matter jurisdiction. *Id.*; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (holding federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party"); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"The existence of federal subject matter jurisdiction must be apparent on the face of the complaint." *Huot v. Montana State Dep't of Child & Family Servs.*, No. 3:16-CV-01767-KI, 2016 WL 4770040, at *2 (D. Or. Sept. 13, 2016) (citing *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998)) (holding "the presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule"). And it is well established that "[i]n assessing diversity jurisdiction, courts look to the real parties to the controversy." *Lewis v. Clarke*, 137 S. Ct. 1285, 1294 (2017) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)). "[T]he citizens upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Savings*, 446 U.S. at 460 (quotation marks omitted). "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* at 461.

In determining subject matter jurisdiction, "the district court is not confined by the facts contained in the four corners of the complaint—it may consider [other] facts and need *not*

assume the truthfulness of the complaint." *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006) (emphasis in original).  When a defendant challenges the plaintiff's factual allegations with proof outside the pleadings, "the plaintiff must support her jurisdictional allegations with 'competent proof' under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)).  "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id*.  The district court may resolve disputed factual issues unless "the issue of subject matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id*. at 1122 n.3.

Generally, the jurisdiction of federal courts is limited to cases governed by federal law (federal-question jurisdiction under 28 U.S.C. § 1331), cases where the parties are completely diverse and the amount in controversy is greater than $75,000 (diversity jurisdiction under 28 U.S.C. § 1332), or cases in which the United States is a party (28 U.S.C. §§ 1345 & 1346).[7] Diversity jurisdiction requires complete diversity among plaintiffs and defendants.  *Jungil Lee v. ANC Car Rental Corp.*, 220 F. App'x 493 (9th Cir. 2007) (cited pursuant to Ninth Cir. Rule 36-3); *Faysound Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290, 295 (9th Cir. 1989) ("diversity must be complete").

Here, although the court likely would find subject matter jurisdiction to be lacking, the arguments that plaintiffs offer are not legally and factually baseless from an objective perspective.  Specifically, plaintiffs offer nonfrivolous arguments that de Borja is a real party in

---

[7] There are of course additional bases for federal subject matter jurisdiction.  *See generally* 14A FED. PRAC. & PROC. JURIS. §§ 3661–3691 (4th ed.).

interest to this dispute and can maintain a direct claim against defendants in satisfaction of the requirement for complete diversity under 28 U.S.C § 1332(a)(3).

As a preliminary matter, the complaint alleges diversity jurisdiction under 28 U.S.C. § 1332(a)(2) rather than § 1332(a)(3).  Compl. ¶ 4, ECF 1.  Plaintiffs represent this was a simple typographical error or mistake.  Pls.' Suppl. Briefing 5, 15, ECF 116.  As plaintiffs explained during oral argument (ECF 132), they meant to allege diversity jurisdiction under § 1332(a)(3) and would have corrected this error if given leave to amend.  Indeed, the court could have granted such leave under 28 U.S.C. § 1653 because a typographical error or mistake is merely a defective allegation.  *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1381 n.3 (9th Cir. 1988) (explaining that 28 U.S.C. § 1653 empowers courts to correct defects of form, not substance).  Also, simply replacing a "2" with a "3" would have been permitted under Rule 15, which provides that "[t]he court should freely give leave when justice so requires."  *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 (9th Cir. 2002) (recognizing the court's duty to permit the amendment of curable jurisdictional defects).  The Ninth Circuit has held that leave to amend under Rule 15 should be granted with "extreme liberality."  *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

Turning then to the pertinent statute, 28 U.S.C. § 1332(a)(3) provides that diversity jurisdiction exists for disputes between "citizens of different states and in which citizens or subjects of a foreign state are additional parties."  "Under the plain language of § 1332(a)(3), for jurisdiction to exist there must be both United States citizen plaintiffs and United States citizen defendants."  *Jungil Lee*, 220 F. App'x at 495; *accord Faysound*, 878 F.2d at 294 ("Diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants.").

Defendants argue subject matter jurisdiction is lacking under § 1332(a)(3) because neither of the United States citizens in this case, ICTSI Oregon and de Borja, are real parties in interest.

### 1.    ICTSI Oregon

Although both this court and the Ninth Circuit have held that ICTSI Oregon was merely a nominal party, *see De Borja*, 835 F. App'x at 186, plaintiffs have offered nonfrivolous arguments that ICTSI Oregon was a real party in interest.  Plaintiffs argued several theories that might have collapsed defendants into a single entity for jurisdictional purposes, including alter ego, corporate-veil piercing, successor-in-interest, and general agency.  Plaintiffs also moved for jurisdictional discovery to explore those issues.  *See* Pls.' Mot. Jurisdiction-Related Discovery, ECF 35.  The court denied that motion and dismissed the case under *forum non conveniens*. However, the court cannot conclude that all of plantiffs' contentions regarding ICTSI Oregon are objectively baseless, especially without having permitted plaintiffs' requested discovery.

### 2.    Plaintiff de Borja

Plaintiffs also offer a nonfrivolous argument that de Borja is a real party in interest.

### a.    State Citizenship and Domicile

"[T]o be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (emphasis in original) (citations omitted).  "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning *one's intent to remain there*." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (emphasis added) (citing *Texas v. Florida*, 306 U.S. 398, 424 (1939)).  "A person's domicile is her permanent home, where she resides with the intention to

remain or to which she intends to return.  A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A person may have multiple residences, but "can only have one domicile." *Aponte–Dávila v. Municipality of Caguas*, 828 F.3d 40, 49 (1st Cir. 2016) (citation and quotation marks omitted).

In his first declaration, de Borja stated only that he split his time between the Philippines and the United States.  Decl. Patrick de Borja, ¶ 5, ECF 44.  De Borja's second declaration clarifies that he is domiciled in California:

> Although I have traveled to the Philippines to visit family, I did not and do not intend or want to live in the Philippines permanently. . . . When in the Philippines, I stay with a sibling because I have no home there. After every trip to the Philippines, I return to my home in California because I have been and intend to remain a citizen and resident of California.

Second Decl. Patrick de Borja ¶ 6, ECF 119.  Therefore, de Borja is a citizen of California.

Defendants assert de Borja's second declaration is suspect and likely a sham affidavit. However, de Borja's additional testimony clarifies his prior testimony much more than it contradicts it.  There are few inconsistencies and no true contradictions between the declarations. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (explaining the sham-affidavit rule does not preclude a party from elaborating, explaining, or clarifying prior testimony, that minor inconsistencies afford no basis for excluding an affidavit, and that contradictions be "clear and unambiguous"); *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) (likening sham correction under Rule 30(e) to a sham affidavit).  Further, plaintiffs' counsel affirm that, at the time the complaint was filed, they understood de Borja to be a citizen of California (although they concede they could have done a

better job of alleging it).  *See* April 2021 Decl. Joshua Ross ¶ 6, ECF 117; April 2021 Decl.

Walter Scott ¶ 8, ECF 118; *see also* Decl. Jeffrey Dobbins ¶¶ 11, 14, ECF 122.

    **b.**  **Article III Standing**

   "A plaintiff seeking relief in federal court must establish the three elements that

constitute the irreducible constitutional minimum of Article III standing, namely, that the

plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Friends of*

*Santa Clara River v. U.S. Army Corps of Engineers*, 887 F.3d 906, 918 (9th Cir. 2018) (citations

and quotation marks omitted).  "To establish injury in fact, a plaintiff must show that he or she

suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540

(2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

The injury-in-fact test requires that "the party seeking review be himself among the injured."

*Lujan*, 504 U.S. at 563.

   Defendants argue that de Borja never personally owned shares of ERI stock, so he could

not have personally suffered an injury in fact.  *See* ICTSI Oregon's Mot. Dismiss 22, ECF 31;

Decl. Ramon S. Esguerra ("Esguerra Decl.") ¶ 29, ECF 32.  The complaint alleges that in 1989

and 1990, Razon, Jr. and his late father defrauded ERI by making four illegal stock transfers.

Complaint ¶ 90, ECF 1.  Plaintiffs offer de Borja's declaration that he purchased a single share of

ERI stock from MFI in May 2018 for the express purpose of bringing this lawsuit.  Pls.' Resp.

Opp. Defs.' Mot. Dismiss 85, 85 n.296, ECF 42; Decl. Patrick de Borja ¶¶ 9-10, ECF 44 ("I

thought that as a United States citizen I could alternatively file in the United States. . . I

volunteered with my siblings to bring the case in the United States. . .  I accordingly assumed

leadership as [MFI's] President with a separate ERI share commensurately assigned to me individually."); *id.*, Ex. 2, at 2, ECF 44-2 (ERI deed of assignment dated May 24, 2018).

Thus, by owning a single share of stock, technically, de Borja has Article III standing. *See In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 156 (2d Cir. 2015) ("Failure to satisfy the contemporaneous ownership requirement [does not] raise a jurisdictional issue under Article III."); *cf.*, *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008) ("we have expressly held that an assignee can sue based on his assignor's injuries").

> ### c.    Prudential Standing: Shareholder Standing Rule and Maintenance of a Direct Action

Standing also has nonconstitutional prudential considerations. *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 335 (1990). In the case of shareholders, the shareholder standing rule precludes shareholders from maintaining an action to redress injuries to the corporation in their own names. *See Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008); *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006); *Pagan v. Calderon*, 448 F.3d 16, 28-29 (1st Cir. 2006); *Erlich v. Glasner*, 418 F.2d 226, 228 (9th Cir. 1969) (citing 13 FLETCHER CYC. CORP. § 5910 (1961 rev. vol.)). Shareholders must generally bring derivative actions on behalf of the corporation, in which case the shareholder is merely a nominal party. *Hershey v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 317 F.3d 16, 20 (1st Cir. 2003); *accord Ross v. Bernhard*, 396 U.S. 531, 538 (1970). Application of any shareholder standing rule is controlled by the law of the state of incorporation. In this case, that would be Philippine law.

Plaintiffs' legal expert, retired Philippine Supreme Court Justice Jose Armando R. Melo, opines "[i]t is elementary in Philippine Corporate law that 'where corporate directors are guilty

of breach of trust—not mere error of judgment or abuse of discretion—and intracorporate

remedy is futile or useless, a stockholder may insititue a suit in [sic] behalf of himself and other

stockholders for the benefit of the corporation.'"[8]  *See* Melo Decl. ¶¶ 55-66, ECF 43 (quoting

*Cua v. Tan*, G.R. No. 181455-56, 4 December 2009) (emphasis omitted).  Here, the complaint

includes such allegations of breach of trust, i.e., that the "self-dealing transfers [were] . . .

ostensibly made to deceive MFI and other similarly situated stockholders."  Compl. ¶ 94, ECF 1.

Whether Justice Melo's interpretation of Philippine case law is correct is debatable.  But as

plaintiffs ' expert Professor Jeffrey Dobbins explains, any disagreements with Justice Melo's

conclusions "require[] careful examinations," and a "subtle legal distinction—even if correct—

demonstrates the complexity and difficulty associated with unpacking the underlying interests in

this case, and the complex nature of these arguments demonstrates the degree to which the

Plaintiffs' assertion of subject matter jurisdiction was objectively reasonable under the

circumstances, even if ultimately incorrect."  Decl. Jeffrey Dobbins ¶¶ 27-28, ECF 122.

### d.  Collusive Assignment and the Manufacture of Diversity Jurisdiction

Professor Dobbin's opinion that application of 28 U.S.C. § 1359,[9] the federal anti-

collusion statute, is "complex and uncertain" is similarly persuasive.  Supreme Court and Ninth

---

[8]  Plaintiffs observe that "the Philippines' modern-day corporate law . . . is largely modeled after and borrows heavily from its American counterparts."  Pls.' Resp. Opp. Defs.' Mot. Dismiss 8-9, ECF 42; *see also* Melo Decl. ¶¶ 6-19, ECF 43 (asserting the Philippine legal system and corporate law is mainly patterned from the American legal system and corporate law).  Some United States courts also recognize exceptions to the shareholder standing rule when there is antagonism between the derivative plaintiffs and the corporation's directors.  *See In re Digimarc*, 549 F.3d at 1234; *N. Tr. Co. v. Bunge Corp.*, 899 F.2d 591, 594 (7th Cir. 1990).  Others have recognized an exception for fraud against minority shareholders.  *E.g., Massey*, 464 F.3d at 646.

[9]  "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  28 U.S.C. § 1359.

Circuit precedents "do not clearly foreclose an argument for a proper transfer in a case."  Decl. Jeffrey Dobbins ¶ 24, ECF 122.

Section 1359 is aimed at preventing parties from "manufacturing diversity jurisdiction." *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992) (citing *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 828-29 (1969)).  Some types of assignments "warrant particularly close scrutiny," including assignments "between parent companies and subsidiaries, and assignments by corporations to their officers or directors, which 'are presumptively ineffective to create diversity jurisdiction.'"  *Id.* at 809-10 (quoting *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir. 1989)).  Courts consider several factors in determining whether an assignment is improper or collusive.  Keeping in mind that the "objective fact of who really is the party in interest is the most important thing to be determined," courts ask:

> were there good business reasons for the assignment; did the assignee have a prior interest in the item or was the assignment timed to coincide with commencement of litigation; was any consideration given by the assignee; was the assignment partial or complete; and was there an admission that the motive was to create jurisdiction.

*Attorneys Trust v. Videotape Computer Prod., Inc.*, 93 F.3d 593, 595-96 (9th Cir. 1996); *see also Yokeno*, 973 F.2d at 810 (stating "the district court must delve deeper into the totality of circumstances surrounding the assignment" when deciding whether an assignment was improper or collusive under § 1359).

Here, de Borja's family holding company is MFI.  Compl. ¶ 6, ECF 1.  In 2016, MFI enlisted the local prosecutor to bring a case for *estafa* (i.e., swindling) against Razon, Jr. in the Philippines.  *See* Decl. Román Hernández, Ex. A, at 3, ECF 37-1.  De Borja's sibling, Francis Roa de Borja ("Francis"), was chair and president of MFI at the time.  *Id.* at 1; Second Decl. Román Hernández, Ex. A, at 3, ECF 74-1; Decl. Alfredo de Borja ¶ 5, ECF 45.  After the

Philippine prosecutor dismissed the *estafa* case, de Borja assumed command of MFI and on May 24, 2018, purchased from Francis a single share of ERI stock for 100 Philippine pesos, or about $2, for the express purpose of suing in the United States, and in federal court specifically. Second Decl. Patrick de Borja ¶ 10, ECF 119; Decl. Patrick de Borja ¶¶ 9-10, ECF 44 ("I thought that as a United States citizen I could alternatively file in the United States. . . I volunteered with my siblings to bring the case in the United States. . . I accordingly assumed leadership as [MFI's] President with a separate ERI share commensurately assigned to me individually."); *id.*, Ex. 2, at 2, ECF 44-2 (ERI deed of assignment dated May 24, 2018).  After the ERI stock purchase,[10] de Borja and MFI then brought this suit in the District of Oregon against Razon, Jr.—along with ICTSI and ICTSI Oregon, who were not defendants in the *estafa* case—based on diversity jurisdiction.  *See* Decl. Román Hernández, Ex. A, at 3, ECF 37-1 (*estafa* case caption lists only Razon, Jr. as defendant).

True, ERI is a defunct corporation that has not conducted business since 1987 and was dissolved by the Philippine Securities and Exchange Commission in 2000.  Compl. ¶¶ 56, 118, ECF 1.  Additionally, de Borja's purchase coincided with the commencement of this litigation. An alteration in corporate structure occurring between when the dispute arose and when the plaintiff sues shows intent to manufacture diversity jurisdiction.  *See N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1449 (9th Cir. 1986).[11]  Also, de Borja paid Francis a

---

[10] While this assignment was for a share of ERI stock and not for the right to sue like the assignment in *Kramer*, the effect is the same because MFI is party to this action.  As the federal anti-collusion statute prohibits manufacturing diversity jurisdiction by "assignment *or otherwise*," § 1359 applies.

[11] Plaintiffs' counsel clarified at oral argument that an *estafa* case is a mixed criminal and civil action where the prosecutor drives the litigation.  It follows that this action is not pure parallel

par value of $2 for his share of ERI stock.  "[C]ourts have used valid yet nominal consideration as evidence that an assignment was made in order to obtain subject matter jurisdiction improperly."  *FNBN-RESCON I LLC v. Ritter*, No. 2:11-CV-1867-GMN-VCF, 2012 WL 3929950, at *5 (D. Nev. Sept. 6, 2012).

However, according to Philippine legal expert Rico Domingo, it is common practice for family members to disregard market value for these types of transactions because the sales price reflects the work that the new owner will take on as president of the family holding company. Domingo Decl. ¶ 37, ECF 120; Second Decl. Patrick de Borja ¶¶ 9-10, ECF 119.  Moreover, plaintiffs otherwise offer "[s]everal cogent reasons" why Francis transferred a single share of ERI stock to de Borja.  Decl. Rico Domingo ¶¶ 38-40, ECF 120.  For instance, a transfer such as this is "consistent with a traditional family estate planning procedure practiced in the Philippines."  *Id.* ¶¶ 5, 32-39; *see also* Second Decl. Patrick de Borja ¶ 10, ECF 119 (noting "Francis' age and potential health issues").[12]  Also, transferring the stock to de Borja made it easier for him to help manage the litigation, which was taking place near his residence in the United States.  *See* September 3, 2020 Transcript 17-19, ECF 101 ("[T]he basic premise was . . . this case may involve a substantial amount of time and attention in and around, you know, the western part of the United States. . . Patrick is the person who is most able, both physically and just logisitically to be in the United States.").

---

litigation, at it is civil only.  Although not prototypical parallel litigation, MFI nonetheless sued here while that case was already in progress.

[12] Defendants objections (ECF 124) and the testimony of their legal expert Ramon Esguerra (ECF 125) are well taken.  But they are outside the bases of the original motion for sanctions. *See* FED. R. CIV. P. 11(c)(2).  Further, plaintiffs reasonably believed the transfer of stock was lawful, even if it was not.

Moreover, while de Borja had no prior interest in ERI apart from his holdings in MFI, plaintiffs contend his MFI holdings form a basis to distinguish the Supreme Court's decision in *Kramer* such that the assignment should be given some weight. Whereas the assignee in *Kramer* had a "total lack of previous connection with the matter," 394 U.S. at 827,[13] de Borja owns shares of MFI and is deeply connected with this matter. *Kramer* was followed by the Ninth Circuit's decision in *Dweck* and the Fifth Circuit's decision in *Syms v. Castleton Indus., Inc.,* 470 F.2d 1078, 1079 (5th Cir. 1972), which gave little weight to a family member's prior interest and found the assignment to be improper:

> [In *Syms,*] a family trust, with mother and son acting as trustees, invested a large sum of money with the defendants. Defendants failed to pay federal income tax on profits for the investment. Mother and all the trust members assigned their interest in the action against the defendants to her son. No consideration was given for the assignments and the son admitted that any recovery would be shared with all members of the trust. *Id.* at 1081–82. The court concluded that the assignment was collusive and dismissed the action. The court relied on the lack of consideration for the transfer and noted that the assignors effectively retained an interest in the proceeds. *Id.* at 1082. Once more the assignee failed to carry the burden of establishing genuine diversity.

*Dweck,* 877 F.2d at 793. It is difficult to distinguish these facts from the present situation; however, considering the other explanations that plaintiffs offer for the transfer, it cannot be said that their position is objectively baseless.

---

[13] In *Kramer*, a Panamanian corporation contracted with a Haitian corporation, and when a dispute over the contract arose, the Panamanian corporation sold its entire interest in the contract to an attorney from Texas for $1 with a promise to pay back 95% of any net recovery on the assigned cause of action. *Id.* at 824. The Texas attorney sued the Haitian corporation in federal court in Texas, and the Supreme Court ultimately found the assignment was "improperly or collusively made" under § 1359:

> If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties. Such 'manufacture of Federal jurisdiction' was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors.

*Id.* at 828-29.

Finally, there is a nonfrivolous argument that de Borja's motive to manufacture diversity jurisdiction should not be given controlling weight under *Attorneys Trust*, 93 F.3d at 596.  De Borja expressly admitted in his prior declaration that the sole purpose of the assignment and corporate restructure was to fulfill his family's desire to sue in the United States.  *See* Decl. Patrick de Borja ¶¶ 9-10, ECF 44; Decl. Alfredo de Borja ¶ 9, ECF 45.  He again affirms his desire to sue in "U.S. District Court."  Second Decl. Patrick de Borja ¶ 10, ECF 119.  However, plaintiffs' counsel represent that they merely wanted the litigation to take place in the United States and could have brought suit in Oregon state court, thereby sidestepping any questions of federal subject matter jurisdiction.  In fact, they expected defendants to remove to the action to this court and sued here to avoid that motions practice.  April 2021 Decl. Walter Scott ¶ 8, ECF 118.

In sum, given the complexity of the law and circumstances, it cannot be said that the complaint is legally or factually baseless from an objective perspective for lack of subject matter jurisdiction.

### D.    Personal Jurisdiction

Plaintiffs' assertion of personal jurisdiction is also not objectively baseless.  Plaintiffs' alter ego, agency, and successor-in-interest theories would collapse defendants into a single entity and disregard all corporate fictions to establish both general- and specific personal jurisdiction.  The parties' briefing on these issues reads like competing law review articles in a post-*Daimler* personal-jurisdiction symposium.  They cite treatises, law review articles, and case law from across the country to make the case that this action fits or does not fit within accepted jurisdictional paradigms or the confines of *Daimler*'s "exceptional case."  *See Daimler AG v.*

*Bauman*, 571 U.S. 117, 139 n.19 (2014). Plaintiffs' arguments are undoubtedly a stretch but appear to be an amalgamation of a good-faith requests for an extension of existing law.

### E.    Statutes of Limitations

Due to the Philippine *void ab initio* doctrine, plaintiffs' assertion that their claims are not time-barred is not objectively baseless.

### 1.    Relevant Facts

The complaint alleges Razon, Jr. and his late father defrauded ERI in 1989 and 1990 by making four illegal stock transfers:

> Transfer 1—on September 5, 1989, Razon Sr., acting as Chairman of ERI, assigned 22,725,000 common shares of ERI stock in ICTSI to Sureste Realty Corporation through its President Razon Jr.;
>
> Transfer 2—on September 5, 1989, Razon Jr., acting as President of ERI, assigned 20,313,674 common shares of ERI's stock in ICTSI to Razon Industries, Inc. through its Chairman Razon Sr.;
>
> Transfer 3—on April 10, 1990, Razon Jr., acting in an undisclosed capacity for ERI, assigned 7,700,000 common shares of ERI's stock in ICTSI to his father, Razon Sr. personally; and
>
> Transfer 4—on April 10, 1990, Razon Sr., acting as Chairman of ERI, assigned 2,300,000 common shares of ERI's stock in ICTSI to Razon Jr. personally.

Compl. ¶ 90, ECF 1 (short titles omitted). The allegations continue, "Since first being partly exposed and confronted in 2004, Razon, Jr. has repeatedly evaded various efforts to resolve or otherwise impose liability upon him for his acts and omissions." *Id.* ¶ 123. "Not until late 2004 were Plaintiffs finally made aware of what had happened when copies of the assignments were obtained and given to them. . . ." *Id.* ¶ 126. The complaint also alleges Razon, Jr. lied to plaintiffs that records of these transactions were destroyed, withheld documents surrounding the transactions from plaintiffs, including an April 10, 1990 compromise settlement agreement between Razon, Jr.'s late father and a member of the Presidential Commission on Good

Government ("1990 Compromise"), and otherwise evaded plaintiffs' attempts to learn the truth of ERI's dissolution. *Id.* ¶¶ 99, 123-129. Razon, Jr. then strung plaintiffs along under false pretenses, including by making settlement offers, *id.* ¶¶ 130-136, and "deliberately and persistently denied and concealed the underlying facts and circumstances giving rise to Plaintiffs' claims." *Id.* ¶ 154.

The complaint alleges any applicable statute of limitations or prescription periods were tolled until September 2016 when plaintiffs finally secured a copy of the 1990 Compromise. *Id.* ¶ 99, n.70. Plaintiffs commenced this lawsuit on June 26, 2018.

Notably, however, MFI sent a demand letter to Razon, Jr. on October 7, 2004, based on the same conduct at issue in the complaint. Compl., Ex. 6, at 1-2, ECF 1-10 ("2004 demand letter" or "demand letter"). The demand letter identifies the second, third, and fourth fraudulent transactions, and alleges the transfers were "unauthorized, ultra-vires, without any or sufficient consideration and ostensibly made to defraud the other stockholders of E. Razon, Inc." *Id.* at 2. It continues:

> Under the circumstances, demand is hereby made upon you and the heirs of Enrique Razon, Sr. to compensate our client, their proportionate and rightful share of ten percent (10%) of the ICTSI shares which were fraudulently and illegally transferred from E. Razon, Inc. to yourselves and your family-owned corporation, inclusive of all pre-emptive rights, dividends and other appurtenances thereto. Unless this demand is met within ten (10) days from receipt hereof, we will be constrained to take the appropriate legal actions to protect the rights and interests of our client.

*Id.* The 2004 demand letter also indicates that the "deeds of assignment of shares of stock" for all three transfers were attached. *Id.*

### 2. Summary of Arguments

In the complaint, plaintiffs invoked seven tolling and accrual doctrines to argue that the statutes of limitations had not run: adverse interest or domination, the discovery rule, fraudulent

concealment, equitable estoppel, the doctrine of continuing torts, interruption by written demand, and the prohibition against lulling.  Compl. ¶ 153 (i)-(vii), ECF 1.

In its motion to dismiss, ICTSI Oregon argued that even assuming a ten-year statute of limitations applies, all of plaintiffs' claims are clearly time-barred because plaintiffs knew enough information to send the demand letter in 2004.  ICTSI Oregon's Mot. Dismiss 27, ECF 31.  In response to the motion to dismiss, plaintiffs argued the following equitable tolling and accrual doctrines made the complaint timely:  discovery rule, fraudulent concealment, equitable estoppel, adverse interest/domination, continuous offense, and *void ab initio* doctrine.  Pls.' Resp. Opp. Defs.' Mot. Dismiss 88, ECF 42.  Plaintiffs did not address the 2004 demand letter.

Defendants renewed their argument in their motion for sanctions.  Defs.' Mot. Sanctions 7, ECF 73.  In response to the motion for sanctions, plaintiffs accuse defendants of ignoring their allegations.  Pls.' Resp. Opp. Mot. Sanctions 21, ECF 75.  They also contend that whether the statute of limitations has run is a "quintessential jury question," and incorporate by reference 13 paragraphs from the declaration of their Philippine legal expert.  *Id.* 22 n.75.  Attorney Walter Scott affirms he investigated the law regarding statute of limitations.  *See* Scott Decl. ¶¶ 6, 51, ECF 76.  However, neither plaintiffs, their attorneys, nor their legal expert even acknowledged the existence of the 2004 demand letter.  In their reply, defendants argue that whether a claim is time barred is a question of law when material facts are undisputed, and otherwise renew their previous arguments.  ICTSI Oregon's Reply Supp. Mot. Dismiss 20, ECF 78; Defs.' Reply Supp. Mot. Sanctions 3, ECF 81.

### 3.    Philippine Statutes of Limitations

Oregon law provides that "if a claim is substantively based . . . [u]pon the law of one other state, the limitation period of that state applies."  O.R.S. 12.430(1)(a).  Oregon law further

provides that if "the statute of limitations of another state applies to the assertion of a claim in this state, the other state's relevant statutes and other rules of law governing tolling and accrual apply in computing the limitation period." O.R.S. 12.440.

Here, Philippine substantive law forms the basis of plaintiffs' claims. Thus, under O.R.S. 12.430(1)(a) and O.R.S. 12.440, the Philippine statute of limitations periods and Philippine rules of law governing tolling and accrual apply. *See Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018, 1022-23 (9th Cir. 2009).

The statutes of limitations at issue here are governed by various provisions of the Philippine Civil Code, and they range from four to ten years for all of plaintiffs' claims. *See* Philippine Civil Code Art. 1144 (ten years); Art. 1145 (six years); Art. 1146 (four years); Decl. Esguerra Decl. ¶¶ 7, 12, ECF 32.

### 4.    Discussion

#### a.    2004 Letter

Defendants assert plaintiffs could have discovered their injury as early as 1990 because the deeds of assignment were publicly available with the Philippine Securities and Exchange Commission, as were ICTSI's articles of incorporation, which showed ERI held a 46% stake of ICTSI at the time. Esguerra Decl. ¶¶ 15-17, ECF 32. But, aside from that argument, plaintiffs *actually discovered* their injury by at least 2004 when MFI sent the demand letter to Razon, Jr. divulging knowledge of three of the illicit stock transfers and threatening to sue. The demand letter indisputably shows MFI had actual knowledge of the harms, causation, and tortious conduct for three of the four fraudulent transfers since at least 2004.

Thus, even applying a ten-year statute of limitations to all claims, none of the tolling or accrual doctrines (except those described below) could make this lawsuit timely. The most

generous application of these doctrines would only toll the prescriptions periods until 2014 at the latest.

Plaintiffs do not address the 2004 demand letter and rely instead on other arguments. *See* Melo Decl. ¶¶ 34-42, ECF 43; *e.g.*, *Maneclang v. Baun*, G.R. No. 27876, 22 April 1992 (equitable estoppel); *People v. Duque*, G.R. No. 100285, 13 August 1992 (discovery rule); *Presidential Commission on Good Government v. Desierto*, G.R. No. l35119, 2l October 2004 (discovery rule). Despite invoking Philippine law, plaintiffs cite cases in state and federal courts from across the United States. However, none of the doctrines cited in those cases toll the statute of limitations after a plaintiff sends a demand letter concerning the conduct at issue in the complaint and reveals actual knowledge of injury, causation, and tortious conduct. *E.g.*, *Greene v. Legacy Emanuel Hospital*, 335 Or. 115 (2002) (discovery rule); *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (fraudulent concealment and equitable estoppel); *Knight v. Wells Fargo Bank, N.A.*, 717 Fed. App'x 749, 750 (9th Cir. 2018) (unpublished) (continuous offense); *F.D.I.C. v. Smith*, 328 Or. 420, 432 (1999) (adverse domination).

### b.    Philippine *Void Ab Initio* Doctrine

Nevertheless, plaintiffs' claims may not be time barred in light of the Philippine's *void ab initio* doctrine. Philippine law distinguishes between void contracts and voidable contracts. Philippine Civil Code Arts. 1390, 1409. Under Article 1409:

> The following contracts are inexistent and void from the beginning:
> (1) Those whose cause, object or purpose is contrary to law, morals, good customs, public order or public policy;
> (2) Those which are absolutely simulated or fictitious;
> (3) Those whose cause or object did not exist at the time of the transaction;
> (4) Those whose object is outside the commerce of men;
> (5) Those which contemplate an impossible service;

(6) Those where the intention of the parties relative to the principal object of the contract cannot be ascertained;

(7) Those expressly prohibited or declared void by law.

*Id.* Art. 1409.  Under Article 1410, "[t]he action or defense for the declaration of the inexistence of a contract does not prescribe."  *Id.* Art. 1410.

Plaintiffs argue that "[e]ach of the four *sub rosa* assignments is null and void *ab initio* as alleged.  Prescription accordingly is a *non sequitur* and altogether inapplicable as untenable because an action which seeks to declare the nullity or inexistence of a contract does not prescribe."  Pls.' Resp. Opp. Defs.' Mot. Dismiss 89, ECF 42.  In support, plaintiffs rely on four cases where Philippine courts deemed void either a conveyance of real property where the property had already been conveyed or where the party conveying the property had no right to do so in the first place.  *Banaga v. Soler*, G.R. No. 149051 (S.C., June 30, 2006) (Phil.) (land survey fraud); *Carino v. Court of Appeals*, G.R. No. L-417661, 31 July 1987 (deed to real property); *Azarcon v. Vallarta*, G.R. No. L-43679 (S.C., Oct. 28, 1980) (Phil.) (certificates of title for parcel of irrigated rice land); *Dir. of Lands v. Animas*, G.R. No. L-37682 (S.C., Mar. 29, 1974) (Phil.) (conveyance of timberlands).  These cases deal with quieting title to parcels of land.

Defendants contend Philippine courts do not apply this doctrine outside the context of real property.  ICTSI Oregon's Reply Supp. Mot. Dismiss 21, ECF 78.  However, Articles 1409 and 1410 are not restricted to any one subject matter, and several Philippine courts applied the doctrine in circumstances like those at issue here.  For example, in *Strategic Alliance Development Corp. v. Radstock Securities Limited et al.*, G.R. No. 178158, December 4, 2009 (en banc), the Philippine Supreme Court held that a publicly owned franchise company's compromise agreement, which was made to satisfy a fictitious 20-year old obligation and resulted in a 10 billion peso fraud on the Filipino people, was inexistent and *void ab initio* such

that the action for recovery was not time-barred. *See also Yuchengo v. Velayo*, G.R. No. L-50439, July 20, 1982 (stock purchase agreement for majority stake in tourism business was *void ab initio* when seller did not seek prior approval from department of tourism, a condition precedent to operating a tourism business); *Rivera v. Litam & Co*, G.R. No. L-16954, April 25, 1962 (fraudulent transfer of decedents' shares of stock made by children to estate to shield estate from creditors were void).

Here, whether the four illegal stock transfers fit into one or more of Article 1409's subsections is unclear because the record was never developed as to that issue. Because the Philippine *void ab initio* doctrine might apply, the court cannot conclude that objectively the complaint is legally or factually baseless for being time-barred.[14]

Having found that the complaint is not factually and legally baseless with respect to subject matter jurisdiction, personal jurisdiction, or the statute of limitations, it is unnecessary to determine "if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian*, 286 F.3d at 1127 (internal citation and quotation marks omitted).

### F.    No Bad Faith

Defendants also contend that certain conduct by plaintiffs' counsel is sanctionable and separately justifies imposing an award. The court previously admonished counsels' disregard of the local rules and page limits, and Scott's "I WANT TO OVERWHELM" email statement. F&R 21-22, ECF 83, *adopted by* Order, ECF 90. But there is no sanctionable bad faith here. Scott represented during oral argument that he had previously worked as defense counsel in a

---

[14] Plaintiffs also do not allege defendants expressly waived or renounced any defense of prescription in their favor under *Development Bank of the Philippines*, G.R. No. L-48889, May 11, 1989. However, there may be a factual issue whether Razon, Jr. could have tacitly renounced the right to raise a statute of limitations defense under Philippine Civil Code Article 1112. *See* Melo Decl. ¶ 32, ECF 43.

"large, big law firm" where there were cases that come "across your desk that you don't even

pay heed to," and "[w]at [he] wanted to get across is just take us seriously." September 3, 2020

Transcript 33, ECF 101. Similarly, plaintiffs' failure to address the 2004 demand letter and their

allegation that they could not have discovered the acts and omissions giving rise to their claims

until October 2016, *see* Compl. ¶¶ 157-58, is allayed by the fact that at least some of the

plaintiffs' claims are not time-barred. While arguably regrettable, none of plaintiffs' conduct

was undertaken in bad faith.

The recent case cited in defendants' notice of supplemental authority (ECF 133) does not

change th analysis. In *St. Charles Health System, Inc. v. Oregon Federation of Nurses and

Health Professionals, Local 5017, AFT, AFL-CIO*, No. 6:21-cr-304-MC, 2021 WL 5986813 (D.

Or. Dec. 16, 2021), the court found that the plaintiff's attorney violated § 1927 by seeking

emergency injunctive relief without disclosing "controlling authority directly adverse to the

position advocated," in violation of the American Bar Association's Model Rule of Professional

Conduct Rule 3.3(a)(3). Counsel was aware of the authority, having raised it in an earlier motion

at the administrative level. Here, after permitting and considering plaintiffs' supplemental

briefing, there are plausible arguments that plaintiffs did not collusively manufacture diversity

jurisdiction, and considering the Philippine *void ab initio* doctrine, plaintiffs' tolling arguments

may similarly have merit. There is no bad faith here.

## V.    Plaintiffs' Motion for Countersanctions (ECF 75)

Plaintiffs moved for countersanctions under Rule 11 and § 1927 on page 28 of their

response to defendants' motion for sanctions. Pls.' Resp. Opp. Mot. Sanctions 28, ECF 75.

Plaintiffs do not represent that they complied with Rule 11's safe harbor requirement by

providing defendants with a copy of the motion 21 days before filing it. Fᴇᴅ. R. Cɪᴠ. P. 11(c)(2).

Nor do they certify that they conferred in good faith to resolve the dispute in violation of LR 7-1(a)(1)(A).  The motion also violates the requirements of Rule 11(c)(2) and LR 7-1(b) in that it was not made separately.  Plaintiffs' motion for countersanctions is therefore denied.

## ORDER

The September 30, 2020 Opinion and Order (ECF 102) is WITHDRAWN, defendants' motion for sanctions (ECF 73) is DENIED, and plaintiffs' motion for countersanctions (ECF 75) is DENIED.

IT IS SO ORDERED.

DATED  December 21, 2021.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge